## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABRAHAM ABDALLAH,<br><br>*Plaintiff*,<br><br>v.<br><br>LEXISNEXIS RISK SOLUTIONS FL INC.,<br>CHEX SYSTEMS, INC.,<br><br>*Defendants*. | Case No.:  19-cv-03609 (RRM)(VMS)<br><br><br>**FIRST AMENDED COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Abraham Abdallah, Plaintiff herein, by his attorneys, alleges and complains of Defendants as follows:

### PRELIMINARY STATEMENT

1.      Abraham Abdallah ("Plaintiff" or "Mr. Abdallah") is a victim of gross misrepresentation of his data on multiple consumer credit reports.  Mr. Abdallah has repeatedly contacted Defendants in attempts to correct the erroneous information contained in their reports about him, but to no avail.

2.      Even though Mr. Abdallah has on multiple occasions provided Defendants with his driver's license, social security card, and even copies of the reports identifying the inaccurate information about him, Defendants have steadfastly refused to rectify their mistakes and fix the inaccuracies contained.

3.      In particular, LexisNexis Risk Solutions FL Inc. ("LexisNexis"), through its Accurint reports program, issued consumer credit reports on Mr. Abdallah containing gross inaccuracies and mistakes, including confusion of Mr. Abdallah's account with various other, unrelated individuals with similar but different names.

4.      LexisNexis continued to issue reports containing false information about Mr. Abdallah long after he directly alerted the company of the inaccuracies.

5.      Chex Systems, Inc. ("Chex Systems") also issued consumer reports containing erroneous information about Mr. Abdallah.

6.      Similarly, Chex Systems continued to issue consumer reports containing false information about Mr. Abdallah after he disputed the inaccurate information being reported about him with Chex Systems.

7.      Despite repeated requests by Plaintiff to correct the inaccuracies in its consumer reports, the reports issues by LexisNexis and Chex Systems (collectively, "Defendants") have not been changed to date.

8.      Because of these inaccuracies, Mr. Abdallah's credit cards and bank accounts have repeatedly been undeservedly closed.  Mr. Abdallah has suffered much harm, humiliation, embarrassment, and emotional distress as a result of Defendants' conduct.

## INTRODUCTION

9.      Mr. Abdallah brings claims against LexisNexis and Chex Systems for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, New York Fair Credit Reporting Act, New York General Business Law § 380, *et seq.* ("NY FCRA"), and New York General Business Law § 349 seeking actual, statutory, and punitive damages, injunctive relief, and statutory attorney's fees.

10.     Congress enshrined within the FCRA the "need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."  15 U.S.C. § 1681(a)(4).

11.     Congress stated plainly the purpose of the FCRA, namely "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ."  15 U.S.C. § 1681(b).

12.     The Defendants violated the FCRA and the provisions of the NY FCRA by:

    a.  failing to conduct a reasonable reinvestigation of Plaintiff's dispute and delete or modify that information, in violation of § 1681i, and upon information and belief, failing to perform certain other related duties pursuant to and in violation of that same provision; and

    b.  failing to maintain procedures to ensure the maximum possible accuracy of the information it reported about Plaintiff, in violation of § 1681e(b).

13.     As a direct and proximate result of the Defendants' negligent and willful actions, conduct, and omissions including, upon information and belief, publishing inaccurate derogatory information to third-parties, Plaintiff suffered cognizable actual damages (both economic and non-economic) including but not limited to credit and account denials, improper closing and reduction of available credit lines, and/or offers for credit at higher interest rates, damage to his reputation, emotional distress, embarrassment, aggravation, and frustration.

14.     Each Defendant's willful violations of the FCRA entitles Plaintiff to an award of punitive damages.

## JURISDICTION AND VENUE

15.     The Court has jurisdiction pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

16.     The Court also has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of interest, costs and attorneys' fees.

17.     Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

18.     Venue is proper in this District because Plaintiff resides in this District, a substantial part of the events and occurrences underlying this litigation occurred within this District, and Defendants regularly conduct business here.

## PARTIES

19.     Plaintiff Abraham Abdallah is a natural person and citizen of New York residing in Brooklyn, New York.

20.     Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

21.     LexisNexis Risk Solutions FL Inc. is a Minnesota corporation and was, at all times relevant to this Complaint, operating as a Nationwide Consumer Reporting Agency within the meaning of the Fair Credit Reporting Act (the "FCRA") (15 U.S.C. § 1681a(f)) and a Consumer Reporting Agency or Consumer Credit Reporting Agency within the meaning of NY FCRA (G.B.L. § 380-a(e) and k)).

22.     LexisNexis has identified itself as a "consumer reporting company" on a list published by the Consumer Financial Protection Bureau (the "CFPB").  *See* CFPB, List of Consumer Reporting Companies 33 (2019), https://files.consumerfinance.gov/f/documents/cfpb_consumer-reporting-companies-list.pdf.

23.     In marketing its Accurint product, LexisNexis advertises that it has compiled records of more than "132 million individuals . . . ." and its reports can utilized for "consumer,

4

commercial, credit card, or trust" purposes."  *See* http://www.accurint.com/hr.html;

http://www.accurint.com/banking.html.

24.     Chex Systems, Inc. ("Chex Systems") is a Minnesota corporation and was, at all

times relevant to this Complaint, operating as a nationwide Specialty Consumer Reporting

Agency within the meaning of the Fair Credit Reporting Act (FCRA) (15 U.S.C. § 1681a(f)) and

a Consumer Reporting Agency or Consumer Credit Reporting Agency within the meaning of NY

FCRA (G.B.L. § 380-a(e) and k)).

25.     Chex Systems identifies itself (and its obligations) as a "nationwide specialty

consumer reporting agency under the federal Fair Credit Reporting Act (FCRA)."  *See*

https://www.chexsystems.com.

26.     Chex Systems also identifies itself as a "consumer reporting company" on a list

published by the Consumer Financial Protection Bureau (the "CFPB").  *See* CFPB, List of

Consumer Reporting Companies 22 (2019), https://files.consumerfinance.gov/f/documents/cfpb_

consumer-reporting-companies-list.pdf.

27.     Chex Systems has complied records of approximately 300 million individual

consumers and "provides services to financial institutions and other types of companies that have

a permissible purpose under the FCRA.  ChexSystems' services primarily assist its clients in

assessing the risk of opening new accounts."

## FACTS

### LexisNexis/Accurint

28.     LexisNexis has repeatedly reported inaccurate information concerning Mr.

Abdallah's name, aliases, age, birthdate, social security number, addresses and prior addresses,

residences and home ownership status, personal associations, and criminal history to various

5

financial institutions through its Accurint program, a consumer reporting service, resulting in Mr. Abdallah repeatedly being denied service by those institutions.

29.    The Accurint product contains information concerning Plaintiff's credit worthiness (including bankruptcy history), credit history and capacity (including income and property ownership), character and general reputation (including criminal history), personal characteristics (including purported personal associations and work history), and mode of living (including co-habitant, neighbor, and neighborhood data).

30.    Mr. Abdallah's nightmarish odyssey at the hands of Defendants began no later than 2014.  Mr. Abdallah, who has always paid his bills when due and observes sound credit practices, in that year learned that his mortgage application had been denied in reliance on an Accurint report prepared by LexisNexis.

31.    Mr. Abdallah therefore obtained a copy of his Accurint report, which he discovered to be filled with inaccurate and false information.  He then contacted LexisNexis by phone in an attempt to get to the bottom of the problem.  As confirmed by a follow-up letter LexisNexis sent to Mr. Abdallah on June 10, 2014, LexisNexis told Mr. Abdallah that the erroneous information in his Accurint report had come from "all three credit bureaus" (i.e., Equifax, Experian, and TransUnion), and LexisNexis invited Mr. Abdallah to contact those companies directly.  Mr. Abdallah did just that, and he learned that the reports from those three credit bureaus did not, in actuality, contain *any* of the inaccuracies found in the Accurint report.

32.    Consequently, Mr. Abdallah on July 8, 2014 wrote LexisNexis to dispute the contents of his Accurint report.  Mr. Abdallah notified LexisNexis that the Accurint report was filled with "misspelled names, incorrect names, incorrect social security numbers, and addresses," and he complained that "3 different mortgage companies ha[d] used the information

6

in [the] report to deny [his] application despite the fact that [he has] excellent credit." Mr. Abdallah specifically asked that LexisNexis "delete all of this incorrect information, all the misspelled names, all the names that [were] totally different from [his], all the incorrect addresses and phone numbers."

33.     Doing his best to help LexisNexis repair its mistakes, Mr. Abdallah enclosed with his July 8, 2014 letter a copy of the Accurint report on which he had explicitly marked everything that was "incorrect or [did] not belong to [him]," all of which he demanded to be "removed." Mr. Abdallah also confirmed that he did not "use any other names but [his] own exactly as written Abraham A. Abdallah [a]nd only [his] social security number and address [as provided]." Finally, Mr. Abdallah furnished LexisNexis with summary pages of reports prepared by Equifax, Experian, and TransUnion, showing that the false Accurint information did not originate with them.

34.     LexisNexis responded on July 24, 2014, incorrectly stating once more that the false information was attributable to the three credit bureaus, even though Mr. Abdallah had established that was not the case. Moreover, LexisNexis reiterated its purported belief that it is "**NOT** a Consumer Reporting Agency," and is "not governed by the Fair Credit Reporting Act." Consequently, according to LexisNexis, it could not and would not "correct or change" the abundance of erroneous information revealed by Mr. Abdallah.

35.     LexisNexis was true to its word:  It did not correct anything in response to Mr. Abdallah's dispute.  LexisNexis continued to issue Accurint reports on Mr. Abdallah that were replete with inaccuracies, and Mr. Abdallah continued to suffer because of it.

36.     After numerous banks relied upon the Accurint report when refusing to open accounts for Mr. Abdallah, he again contacted LexisNexis by letter dated January 5, 2015.  Mr.

Abdallah wrote to LexisNexis to request a copy of his current Accurint report and to dispute the inaccurate identifying information.  In particular, Mr. Abdallah again provided LexisNexis the proper spelling of his name and his correct (and only) address, once more insisting that LexisNexis "delete all the incorrect addresses other than the one above" and "remove all the names on the report other than [his] own."

37.     On or about February 3, 2015, LexisNexis responded to Mr. Abdallah's dispute by, *inter alia*, denying that it is a Consumer Reporting Agency and asserting that federal law does not require LexisNexis to correct inaccurate information.

38.     As part of its response, LexisNexis also provided Mr. Abdallah with a copy of his Accurint report dated February 3, 2015.  This report contained numerous inaccuracies, including but not limited to:

   a.     A section titled "Names Associated with Subject" contained twenty-three (23) different listed names, birthdates, and social security numbers. Twenty (20) of those listings were inaccurate.  Errors included, *inter alia*, misspellings of Mr. Abdallah's name, misidentifying his age, and listing an incorrect social security number.

   b.     A section titled "Others Associated with Subject SSN" contained seven (7) different listed names, birthdates, and social security numbers.  Five (5) of those listings were inaccurate.  Errors included, *inter alia*, misidentifying Mr. Abdallah for his brother Ahamad and other unknown individuals.

   c.     A section titled "Address Summary" contained twenty-seven (27) different addresses and the alleged years Mr. Abdallah lived there.  Twenty-five

(25) of those addresses were inaccurate.  Mr. Abdallah does not now and has never lived at those twenty-five addresses.

d.  In a section titled "Previous and Non-Verified Addresses" containing twenty-four (24) addresses and P.O. Boxes, eighteen (18) of the listings were inaccurate.  Mr. Abdallah does not and has never lived at those addresses or utilized any of the identified P.O. Boxes.

e.  In a section titled "Possible Associates" containing eighteen (18) different individuals that were "associated" with Mr. Abdallah (in an undisclosed fashion), seventeen (17) were inaccurate.  Mr. Abdallah does not know or has no associations with any of those seventeen individuals.

39.  In a subsequent letter dated February 2, 2016, Mr. Abdallah again wrote to LexisNexis disputing the inaccurate information contained in the Accurint report.  In this letter, Mr. Abdallah reiterated that he was "having a problem opening bank accounts with financial institutions because of" the Accurint report.

40.  As with his previous requests, Mr. Abdallah alerted LexisNexis to "several inaccuracies with the spelling of [his] name and addresses," and he asked LexisNexis to "please remove any names and addresses that are not [his]."  In a repeated effort to expedite this process, Mr. Abdallah provided Lexis Nexis with "a copy of his drivers license and social security card," along with another copy of the Accurint report with "incorrect information listed and highlighted."  Mr. Abdallah demanded the "immediate[]" removal of the "incorrect information" he identified in the report.

9

41.     On or about March 21, 2016, LexisNexis responded to the dispute with boilerplate language re-asserting that, *inter alia*, LexisNexis is not a Consumer Reporting Agency and it would not verify or correct inaccurate information.

42.     As part of their response to the dispute, LexisNexis also provided Mr. Abdallah with a new copy of his Accurint report, dated March 21, 2016.  This report contained numerous new and different inaccuracies, including but not limited to:

a.      In a section titled "Names Associated with Subject" containing eighteen (18) different listed names, birthdates, and social security numbers, fourteen (14) listings were inaccurate.  Errors included, *inter alia*, misspellings of Mr. Abdallah's name, including identifying him as "ABRAHAM ABDALLADELETETRADE," and listing incorrect social security numbers.

b.      In a section titled "Others Associated with Subject SSN" containing nine (9) different listed names, birthdates, and social security numbers, eight (8) listings were inaccurate.  Errors included, *inter alia*, again misidentifying Mr. Abdallah for his brother Ahamad and other unknown individuals.

c.      In a section titled "Address Summary" containing twenty-five (25) addresses and P.O. Boxes and the alleged times Mr. Abdallah lived there or used them, twenty (20) of the listings were inaccurate.  Mr. Abdallah does not and has never lived at those addresses or utilized those P.O. Boxes.

d.  In a section titled "Active Address(es)," no home address was listed for Mr. Abdallah.  In truth, Plaintiff lives in a home in Brooklyn.

e.  In a section titled "Previous and Non-Verified Addresses" containing twenty-five (25) different addresses and P.O Boxes, twenty (20) of the listings were inaccurate.  Erroneous listings include, *inter alia*, a jail cell in the Rikers Island's adolescent unit which allegedly housed a different individual named Abrihim A. Abdallah in the 1980s.  This is particularly egregious in light of the aforementioned February 5, 2015 Accurint report, which correctly stated that Plaintiff has no criminal record.

43.  On or about April 1, 2016, LexisNexis sent Mr. Abdallah another letter responding to Plaintiff's continued disputes.  In this letter, LexisNexis again asserted that, *inter alia*, it is not a Consumer Reporting Agency and it would not verify or correct inaccurate information.

44.  Moreover, LexisNexis claimed in the April 1, 2016 letter that its erroneous address information "was reported to [LexisNexis] by the credit bureaus, voter registration records, and utility records."  LexisNexis indicated that Mr. Abdallah should "contact those [unspecified] sources directly" in order to correct LexisNexis' Accurint report.

45.  In June and July of 2016, the bank "Citi" closed nine separate accounts held by Mr. Abdallah and his wife, Munna Ahmad.  Upon information and belief, Citi closed the accounts in reliance on an Accurint report prepared by LexisNexis.

46.  In September of 2016, Bank of America closed three separate accounts held by Mr. Abdallah.  Upon information and belief, Bank of America closed the accounts in reliance on an Accurint report prepared by LexisNexis.

47.     Subsequently, on November 11, 2017, Mr. Abdallah wrote to LexisNexis one more time to dispute the inaccurate information contained in the Accurint report.  Mr. Abdallah protested that he was "having difficulty opening a checking account at local banks based on [the Accurint] report."  Mr. Abdallah further stated that banks were using the Accurint report to grant credit or employment, despite the claims of LexisNexis that this did not occur.  Mr. Abdallah provided LexisNexis his social security number, date of birth, and address, affirming that they constitute "the only names" he uses.  Mr. Abdallah again requested that LexisNexis "remove all the names, addresses and incorrect SS numbers not belonging to [him]," making clear that "[a]ny other names and addresses, SS #s, DOB other than [what he provided] is not [his] or incorrect."

48.     On or about January 2, 2018, LexisNexis responded to the dispute by once again claiming, *inter alia*, that LexisNexis is not a Consumer Reporting Agency and that federal law does not require it to correct inaccurate information within Accurint reports.

49.     As before, LexisNexis also provided Mr. Abdallah with a new copy of his Accurint report, dated January 2, 2018.  This report contained numerous new and different inaccuracies, including but not limited to:

    a.     In a section titled "Subject Information," and in a separate section titled "Names Associated with Subject," both containing one (1) listed name, birthdate, and social security number, Mr. Abdallah was incorrectly identified as 80 years old.

    b.     In a section titled "Others Associated with Subjects SSN" containing twenty-five (25) different listed names, birthdates, and social security numbers, fourteen (14) listings were inaccurate.  Errors included, *inter*

12

*alia*, again misidentifying Mr. Abdallah for his brother Ahamad and other unknown individuals.

c.    In a section titled "Address Summary" containing six (6) addresses and P.O. Boxes and the alleged times Mr. Abdallah lived there or used them, two (2) of the listings were inaccurate.  Mr. Abdallah does not and has never lived at those addresses or utilized those P.O. Boxes.

d.    In a section titled "Active Address(es)," no home address was listed for Mr. Abdallah.  In truth, Plaintiff lives in a home in Brooklyn.

e.    In a section titled "Previous and Non-Verified Addresses" containing six (6) different addresses and P.O Boxes, two (2) of the listings were inaccurate.  Mr. Abdallah does not and has never lived at those addresses or utilized those P.O. Boxes.

50.    On or about that time, LexisNexis also provided Mr. Abdallah with a Benefit Consumer Disclosure Report dated January 3, 2018.  This report similarly contained numerous errors and misidentifications, including but not limited to:

a.    In a section titled "Identification Records" containing sixteen (16) listings of, *inter alia*, Mr. Abdallah's name, social security number, address, and date of birth, four (4) listings were incorrect.  Two listings misspelled Mr. Abdallah's name and two contained the wrong social security number.

51.    Consequently, on January 26, 2018, Mr. Abdallah notified LexisNexis that the Benefit Consumer Disclosure Report contained inaccurate information.  In particular, Mr. Abdallah emphasized that the report "contain[ed] a great deal of errors, misspelled names, incorrect addresses and social security numbers."  Mr. Abdallah "once again" enclosed a copy of

his driver's license, and he again requested that LexisNexis "remove all the misspellings of [his] name, ss numbers and all the incorrect addresses listed on this report."  Mr. Abdallah confirmed that he had "never lived at these addresses nor [did he] go by any of these other misspelled names only the name on [his] drivers license."  Mr. Abdallah implored LexisNexis "to please remove all of this . . . incorrect information off of this report," noting that he had asked LexisNexis "time and time again to remove these incorrect items."  Mr. Abdallah additionally reminded LexisNexis that "[n]one of this information is listed in [his] credit reports as you claim."

52.     To date, upon information and belief, LexisNexis has not replied to this dispute.

53.     Additionally, in a letter dated April 12, 2018, Mr. Abdallah again filed a dispute with LexisNexis trying to correct the numerous errors in the Accurint report.  Mr. Abdallah stated his social security number in the letter and provided LexisNexis with additional copies of his driver's license and social security card.  Mr. Abdallah disputed "all the incorrect information listed in the report like all the names that are not related to [his] name, the misspellings of [his] name, all the addresses and social security numbers that are not [his]."

54.     On May 9, 2018, LexisNexis alleged that "[u]pon review of the information, we have found that Credit Bureaus, Courts, Boat Registration, Property Records, and U.S. Coastguard reported the data" in the Accurint report, and that Mr. Abdallah needed to reach out to each of them for questions about the underlying data.  Significantly, Mr. Abdallah has established that none of the Credit Bureaus report the incorrect information contained in the Accurint report, he has never registered a boat, and he has never had any sort of relationship with the U.S. Coast Guard.

55.     To date, LexisNexis has not taken meaningful steps to correct its errors or to respond to Mr. Abdallah's concerns.

56.     Upon information and belief, because LexisNexis asserts that its Accurint product is not subject to the FCRA or NY FCRA, it has not conducted a reasonable reinvestigation of Mr. Abdallah's disputes about the inaccuracies appearing in his Accurint reports.

57.     Upon information and belief, because LexisNexis asserts that its Accurint product is not subject to the FCRA or NY FCRA, it has not undertaken any steps to correct its data collection methods or check the accuracy of its data sources with respect to the inaccuracies that appear on Mr. Abdallah's Accurint reports or ensure compliance with procedures that would lead to maximum possible accuracy in its consumer reports.

### Chex Systems

58.     Chex Systems has also caused Mr. Abdallah to unjustifiably be denied service by multiple financial institutions and failed to correct their errors as required by law.

59.     On October 19, 2017, Bethpage Federal Credit Union refused to open a Business Savings Account for Mr. Abdallah.

60.     Upon information and belief, Bethpage Federal Credit Union denied Mr. Abdallah in reliance on an erroneous credit report from Chex Systems.

61.     On or about October 24, 2017, Mr. Abdallah filed a dispute with Chex Systems by fax according to the policies and procedures stated on the Chex Systems website.  Mr. Abdallah asserted that he "was recently denied a bank account from BethPage Federal Credit Union because they stated [his] date of birth was wrong" in the Chex System report.  Mr. Abdallah provided Chex System with "a copy of his drivers license and ss card," and he asked that Chex Systems "correct [his] date of birth to 10/30/1968."

62.     Subsequently, Mr. Abdallah attempted to open a savings account with Transportation Federal Credit Union.

63.     However, on March 12, 2018, Transportation Federal Credit Union denied Mr. Abdallah's application for an account on the basis of a Chex Systems report asserting, *inter alia*, that Mr. Abdallah's reported address is not a residential address, that his Social Security Number was linked to other individuals, and that an Extended Fraud Alert had been placed on his credit report.

64.     Mr. Abdallah has never placed a fraud alert or credit freeze on his Chex Systems report.

65.     Mr. Abdallah complained multiple times by telephone to Chex Systems that his Chex Systems report contained errors, he had not placed a fraud alert or credit freeze on his Chex Systems report, and that any such alert or freeze should be removed.

66.     Nevertheless, Chex Systems continued to report erroneous information about Mr. Abdallah on his Chex Systems reports, including that he had placed a fraud alert on his report.

67.     Mr. Abdallah attempted to open an account with Justice Federal Credit Union on October 12, 2018.

68.     However, on October 30, 2018, Justice Federal Credit Union denied Mr. Abdallah's application for an account.  Justice Federal Credit Union alleged that they were unable to verify Mr. Abdallah's identification based on reports from Chex Systems (as well as from Equifax Credit Information Services).

69.     Mr. Abdallah filed a request for Justice Federal Credit Union to reconsider its denial on November 5, 2018, which was again rejected for the same reason only a few days later on November 7, 2018.

70.     Upon information and belief, the consumer reports that Chex Systems distributed to Justice Federal Credit Union contained the very errors about which Mr. Abdallah has complained to Chex Systems.

71.     Upon information and belief, Chex Systems has not conducted a reasonable reinvestigation of Mr. Abdallah's disputes about the inaccuracies appearing in his Chex Systems reports.

72.     Upon information and belief, Chex Systems has not undertaken any steps to correct its data collection methods or check the accuracy of its data sources with respect to the inaccuracies that appear on Mr. Abdallah's Chex Systems reports or ensure compliance with procedures that would lead to maximum possible accuracy in its consumer reports.

**Damages**

73.     Upon information and belief, despite Plaintiff's disputes, Defendants continue to furnish their erroneous reports about Plaintiff.

74.     As a result of Defendants' conduct, Plaintiff has suffered actual damages in the form of economic and non-economic harm, both of which are cognizable pursuant to the FCRA and NY FCRA.

75.     Plaintiff has suffered actual damages in the form of financial harm and dignitary harm arising from the injury to his credit rating and reputation, inability to access credit, banking, insurance, and financial products, deprivation of economic activity, as well as his inability to open or maintain consumer banking and credit accounts.  Plaintiff will continue to suffer the same for an indefinite time in the future, all to Plaintiff's great detriment and loss.

76.     Plaintiff's consumer reports and file have been obtained from Defendants and been reviewed many times by prospective and existing credit grantors, employers, investors,

financial institutions, and extenders of credit. The inaccurate information has been a substantial

factor in precluding Plaintiff from receiving many different credit offers and opportunities,

known and unknown, and from receiving the most favorable terms in financing and interest rates

for credit offers that were ultimately made.

77.     Additionally, the inaccurate consumer reporting has cost Plaintiff significant time

in pursuit of corrected reports, mental anguish, anxiety, and stress.

## FIRST CLAIM FOR RELIEF
### Failure to Conduct a Reasonable Investigation, 15 U.S.C. § 1681i
### Against All Defendants

78.     Mr. Abdallah repeats and re-alleged and incorporates by reference the foregoing

paragraphs.

79.     LexisNexis and Chex Systems violated multiple sections of 15 U.S.C. § 1681i by

their conduct, acts, and omissions, including but not limited to:

    a.     Failing to conduct a reasonable investigation to determine whether the

        disputed information is inaccurate and delete the items from Mr.

        Abdallah's credit file in violation of § 1681i(a)(1);

    b.     Failing to review and consider all relevant information submitted by Mr.

        Abdallah in violation of § 1681i(a)(4); and

    c.     Failing to properly delete the disputed inaccurate items of information

        from Mr. Abdallah's credit files or modify the items of information upon a

        lawful reinvestigation in violation of § 1681i(a)(5).

80.     As a result of LexisNexis' and Chex Systems' violations of 15 U.S.C. § 1681i,

Mr. Abdallah suffered actual damages including but not limited to: loss of credit, deprivation of

economic activity, damage to reputation, embarrassment, humiliation, anguish, and other

economic and emotional harm cognizable pursuant to the FCRA.

81.     These violations of § 1681i were willful, rendering LexisNexis and Chex Systems liable for actual damages, statutory damages, costs, reasonable attorneys' fees, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

82.     In the alternative, LexisNexis and Chex Systems were negligent, entitling Mr. Abdallah to recover actual damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o.

### SECOND CLAIM FOR RELIEF
**Failure to Implement or Follow Reasonable Procedures, 15 U.S.C. § 1681e(b)**
**Against All Defendants**

83.     Mr. Abdallah repeats and re-alleges and incorporates by reference the foregoing paragraphs.

84.     LexisNexis and Chex Systems violated 15 U.S.C. § 1681e(b) by their conduct, acts, and omissions, including but not limited to failing to establish and/or follow reasonable procedures to assure maximum possible accuracy of the information concerning Mr. Abdallah in the preparation of his credit report and credit files that they published and maintained.

85.     As a result of LexisNexis' and Chex Systems' violations of § 1681e(b), Mr. Abdallah suffered actual damages including but not limited to: loss of credit, lost economic value, lost profits, damage to reputation, embarrassment, humiliation, anguish, and other emotional harm cognizable pursuant to the FCRA.

86.     These violations of § 1681e(b) were willful, rendering Defendants liable for actual damages, statutory damages, costs, reasonable attorneys' fees, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

87.     In the alternative, Defendants were negligent, entitling Mr. Abdallah to recover actual damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o.

### THIRD CLAIM FOR RELIEF
### Failure to Promptly Investigate, NY FCRA §380-f
### Against All Defendants

88.　　Mr. Abdallah repeats and re-alleges and incorporates by reference the foregoing paragraphs.

89.　　LexisNexis and Chex Systems violated multiple sections of the NY FCRA (NY GBL §§ 380 - 380-u) by their conduct, acts, and omissions, including:

a.　　Failing to promptly investigate Mr. Abdallah's dispute to determine whether the disputed information is inaccurate and record the current status of the disputed information in violation of § 380-f(a).

90.　　These violations of § 380-f were willful, rendering LexisNexis and Chex Systems liable for actual damages, costs, reasonable attorneys' fees, and punitive damages in an amount to be determined by the Court pursuant to § 380-1 and entitling Mr. Abdallah to injunctive relief restraining LexisNexis and Chex Systems from any further violations of Mr. Abdallah's rights pursuant to NY FCRA.

91.　　In the alternative, LexisNexis and Chex Systems were negligent, entitling Mr. Abdallah to recover actual damages, costs, and reasonable attorneys' fees pursuant to § 380-m as well as injunctive relief restraining LexisNexis and Chex Systems from any further violations of Mr. Abdallah's rights pursuant to the NY FCRA.

### FOURTH CLAIM FOR RELIEF
### Failure to Establish or Follow Reasonable Procedures, NY FCRA § 380-j
### Against All Defendants

92.　　Mr. Abdallah repeats and re-alleges and incorporates by reference the foregoing paragraphs.

93.　　LexisNexis and Chex Systems violated multiple sections of the NY FCRA (NY GBL §§ 380 - 380-u) by their conduct, acts, and omissions, including:

a.   Failing to establish and/or follow reasonable procedures to assure maximum possible accuracy of the information concerning Mr. Abdallah in the preparation of his credit report and credit files that it published and maintained in violation of § 380-j(e).

94.   These violations of § 380-j(e) were willful, rendering LexisNexis and Chex Systems liable for actual damages, costs, reasonable attorneys' fees, and punitive damages in an amount to be determined by the Court pursuant to § 380-1 and entitling Mr. Abdallah to injunctive relief restraining LexisNexis and Chex Systems from any further violations of Mr. Abdallah's rights pursuant to NY FCRA.

95.   In the alternative, LexisNexis and Chex Systems were negligent, entitling Mr. Abdallah to recover actual damages, costs and reasonable attorneys' fees pursuant to § 380-m as well as injunctive relief restraining LexisNexis and Chex Systems from any further violations of Mr. Abdallah's rights pursuant to the NY FCRA.

### FIFTH CLAIM FOR RELIEF
**Engaging in Deceptive Acts and Practices, NY GBL § 349**
**Against All Defendants**

96.   Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

97.   New York prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state. . . ."  N.Y. Gen. Bus. Law § 349(a).

98.   An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions."  N.Y. Gen. Bus. Law § 349(h).

99.     Defendants LexisNexis and Chex Systems violated Section 349 of the New York General Business Law by using deceptive acts and practices in the conduct of their businesses.

100.    Defendants violations include, but are not limited to, falsely representing to Plaintiff and third-parties Plaintiff's name, aliases, age, birthdate, social security number, addresses and prior addresses, residences and home ownership status, personal associations, criminal history, and fraud status and failure to correct the reporting of such information when the inaccuracies were brought to their attention.

101.    Upon information and belief, LexisNexis and Chex Systems are in the business of compiling information about consumers and distributing this information to third-parties, including financial institutions, credit granting organizations, insurers, law enforcement agencies, and potential employers.

102.    Upon information and belief, the consumer reports LexisNexis and Chex Systems generated about Mr. Abdallah are standardized reports that are generated about individual consumers identified (or misidentified) in their data compilations.

103.    LexisNexis has compiled information of over 132 million individual consumers and routinely furnishes reports to third-parties about these individuals, but as reflected in the experiences of Plaintiff, has failed to establish quality control procedures or sufficient mechanisms for reasonably investigating inaccurate information that it reports about consumers.

104.    Similarly, Chex Systems has compiled information of 300 million individual consumers and routinely furnishes reports to third-parties about these individuals (including over 80% of the banks in the United States), but as reflected in the experiences of Plaintiff, has failed to establish quality control procedures or sufficient mechanisms for reasonably investigating inaccurate information that it reports about consumers.

105.    Even when the inaccuracies in their reports were brought to each of the

Defendants attention by Plaintiff, Defendants failed to correct their reports, adjust their data

gathering methods, or reasonably investigate the claims of inaccuracy.

106.    Upon information and belief, the experiences of Plaintiff are not unique; rather,

Defendants failure to put in place data quality controls and mechanisms for reasonably

investigating and correcting errors in their reports widely affects consumers at large.

107.    Defendants' conduct is of a recurring nature and has a broad impact on consumers

at large.

108.    For these reasons, Plaintiff is entitled to actual damages, declaratory judgment, an

injunction of the deceptive practices set forth herein (including *inter alia*, an injunction against

Defendants requiring them to delete all inaccurate information from Mr. Abdallah's consumer

reports, etc.), three times actual damages up to $1000, punitive damages, costs and reasonable

attorneys' fees.

**WHEREFORE**, Mr. Abdallah seeks judgment in his favor and damages against

Defendants:

A.    awarding Mr. Abdallah against all Defendants actual damages in an

amount exceeding $75,000, statutory damages, punitive damages, costs,

and reasonable attorneys' fees;

B.    ordering all Defendants to immediately delete all inaccurate information

from Mr. Abdallah's consumer reports and files and cease reporting the

inaccurate information to any and all persons and entities to whom it

reports consumer information and to send updated and corrected consumer

23

report information to all persons and entities to whom it has reported

inaccurate information about Mr. Abdallah within the last three years;

C.      enjoining all Defendants from violating Mr. Abdallah's NY FCRA rights;

and

D.      any such other and further relief as may be necessary, just, and proper.


**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Mr. Abdallah demands a trial by jury as

to all issues so triable.


Dated: December 26, 2019


Respectfully Submitted,

Evan S. Rothfarb
Daniel A. Schlanger
SCHLANGER LAW GROUP, LLP
9 East 40th Street, Suite 1300
New York, NY 10016
T: 212-500-7116
F: 646-612-7996
erothfarb@consumerprotection.net
dschlanger@consumerprotection.net