UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ABRAHAM ABDALLAH,

                 Plaintiff,

     - against -

LEXISNEXIS RISK SOLUTIONS FL INC.,
CHEX SYSTEMS, INC.,

                 Defendants.
----------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

**MEMORANDUM AND ORDER**
19-CV-3609 (RRM) (VMS)

     Plaintiff Abraham Abdallah brings this action against defendants LexisNexis Risk

Solutions FL, Inc. ("LexisNexis") and Chex Systems, Inc. ("Chex"), alleging failure to

investigate or cure erroneous consumer credit reports, in violation of the Fair Credit Reporting

Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.; New York Fair Credit Reporting Act ("NYFCRA"),

N.Y. Gen. Bus. Law § 380 *et seq*.; and N.Y. Gen Bus. Law § 349.  (Am. Compl. (Doc. No. 21).)

Both defendants separately move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (Notice of

Motion (Doc. Nos. 29, 30).)  For the reasons stated below, LexisNexis's motion is granted in part

and denied in part and Chex's motion is granted in part and denied in part.

## BACKGROUND

     The following facts are drawn from Abdallah's Amended Complaint and are assumed to

be true for the purpose of this Memorandum and Order.  LexisNexis provides reports for

financial institutions through its Accurint program, a reporting service that provides, among

other things, information about a consumer's bankruptcy history; income and property

ownership; criminal history; purported personal associations and work history; and co-habitant,

neighbor, and neighborhood data.  (Am. Compl. ¶ 29.)

Sometime in 2014, Abdallah applied for and was denied a mortgage based on information contained in an Accurint report.  (*Id*. ¶ 30.)  Abdallah obtained a copy of the Accurint report, which he discovered was filled with inaccurate and false information.  (*Id*. ¶ 31.)  He then contacted LexisNexis by phone in an attempt to address this problem.  (*Id*.)  In a follow-up letter sent from LexisNexis to Abdallah on June 10, 2014, LexisNexis told Abdallah that the erroneous information in his Accurint report had come from all three credit bureaus, meaning Equifax, Experian, and TransUnion.  (*Id*.)  LexisNexis advised Abdallah to contact those companies directly.  (*Id*.)  When he did so, Abdallah learned that the reports from those three credit bureaus did not, in fact, contain the inaccuracies found in the Accurint report.  (*Id*.)

On July 8, 2014, Abdallah wrote to LexisNexis to dispute the contents of his Accurint report.  (*Id*. ¶ 32.)  He notified LexisNexis that the Accurint report was filled with misspelled and incorrect names, social security numbers, and addresses.  He complained that three different mortgage companies had used the information in the report to deny his application despite his excellent credit.  (*Id*.)  Abdallah specifically asked LexisNexis to delete all of the incorrect information, misspelled and incorrect names, and incorrect addresses and phone numbers.  (*Id*.)  In an attempt to help LexisNexis rectify the errors, Abdallah enclosed with his letter an annotated copy of the Accurint report, noting everything that was incorrect and which he demanded be removed.  (*Id*. ¶ 33.)  He also confirmed that he did not use any other names but his own, Abraham A. Abdallah, and used only his own social security number and address, which he provided.  (*Id*.)  He also furnished LexisNexis with summary pages of reports prepared by Equifax, Experian, and TransUnion, showing that the false Accurint information did not originate with them.  (*Id*.)

On July 24, 2014, LexisNexis responded, again stating that the incorrect information in the 2014 Accurint report was attributable to the three credit bureaus.  (*Id*. ¶ 34.)  LexisNexis also stated in its response that it is not a Consumer Reporting Agency and is not governed by the Fair Credit Reporting Act; consequently, it could not and would not correct or change the erroneous information in Abdallah's Accurint report.  (*Id*.)

After "numerous banks" relied upon the Accurint report when refusing to open accounts for Abdallah, he again contacted LexisNexis by letter on January 5, 2015.  (*Id*. ¶ 36.)  Abdallah wrote to LexisNexis to request a copy of his current Accurint report and to dispute the inaccurate identifying information contained therein.  (*Id*.)  He provided LexisNexis with the proper spelling of his name and his correct address and insisted that LexisNexis delete all the other incorrect addresses and remove all the names on the report other than his own.  (*Id*.)

On or about February 3, 2015, Lexis Nexis responded to Abdallah's letter by denying that it is a Consumer Reporting Agency and asserting that federal law does not require LexisNexis to correct inaccurate information.  (*Id*. ¶ 37.)  As part of its response, LexisNexis also provided Abdallah with a copy of his Accurint report dated February 3, 2015.  (*Id*. ¶ 38.)

This Accurint Report contained numerous inaccuracies.  For example, in a section titled "names associated with subject" containing twenty-three different names, birthdays and social security numbers, twenty were erroneous.  In a section titled "others associated with subject SSN" containing seven different listed names, birthdates, and social security numbers, five were inaccurate and misidentified Abdallah for his brother Ahamad or other unknown individuals.  A section titled "address summary" contained twenty-seven different addresses, but Abdallah had never resided at twenty-five of them.  Similarly, a section titled "previous and non-verified addresses" contained twenty-four addresses and P.O. Boxes, eighteen of which Abdallah had

never used.  A section titled "possible associates" contained eighteen different individuals with whom Abdallah was allegedly associated, seventeen of whom Abdallah did not know or associate with.  (*Id*. ¶ 38.)

In a subsequent letter dated February 2, 2016, Abdallah again wrote to LexisNexis disputing the inaccurate information contained in the Accurint report.  (*Id*. ¶ 39.)  In this letter, he stated that he was having problems opening bank accounts with financial institutions because of the Accurint report.  (*Id*.)  He again enclosed a letter highlighting the incorrect information included in the report, as well as a copy of his driver's license and social security card, with a demand for the immediate removal of the incorrect information he had identified.  (*Id*. ¶ 40.)

On or about March 21, 2016, LexisNexis responded to Abdallah by reiterating that LexisNexis is not a Consumer Reporting Agency and it would not verify or correct inaccurate information.  (*Id*. ¶ 41.)  LexisNexis also provided Abdallah with a new copy of his Accurint report, dated March 21, 2016.  This report contained new and different inaccuracies.  For example, a section titled "names associated with subject" containing eighteen different listed names, birthdates, and social security numbers, fourteen of which were inaccurate.  Among the names listed was "ABRAHAM ABDALLADELETETRADE."   In a section titled "others associated with subject SSN" containing nine different names, birthdates, and social security numbers, eight names were inaccurate.  Among the names listed was his brother's: Ahamad.  In a section titled "address summary" containing twenty-five addresses and P.O. Box listings and alleged dates when Abdallah lived there or used them, twenty of the addresses were inaccurate. Similarly, a section titled "active addresses" listed no home address, even though Abdallah lives in a home in Brooklyn, and twenty of the twenty-five different addresses and P.O. Boxes listed in a section titled "previous and non-verified addresses" were inaccurate.  (*Id*. ¶ 42.)  This last

section listed as one of his previous addresses a jail cell in the Riker's Island adolescent unit which had housed a different individual, Abrihim A. Abdallah, in the 1980s; Abdallah has no criminal record.  (*Id*.)

On or about April 1, 2016, LexisNexis sent Abdallah another letter responding to Abdallah's continued effort to dispute the contents of his Accurint reports, again stating that it is not a Consumer Reporting Agency and it would not verify or correct inaccurate information.  (*Id*. ¶ 43.)  LexisNexis claimed in that letter that its erroneous address information was reported to LexisNexis by the credit bureaus, voter registration records, and utility records, and directed Abdallah to contact those sources in order to correct the Accurint report.  (*Id*. ¶ 44.)

In June and July of 2016, Citibank closed nine accounts held by Abdallah and his wife, Munna Ahmad.  (*Id*. ¶ 45.)  Abdallah alleges, on information and belief, that the bank closed the accounts based on an Accurint report prepared by LexisNexis.  (*Id*.)  In September of 2016, Bank of America closed three accounts held by Abdallah.  Again, Abdallah alleges, on information and belief, that Bank of America closed these accounts based on an Accurint report prepared by LexisNexis.  (*Id*. ¶ 46.)

On October 19, 2017, Bethpage Federal Credit Union refused to allow Abdallah to open a Business Savings Account, a decision which Abdallah alleges, on information and belief, was based on an erroneous credit report provided by Chex.  (*Id*. ¶¶ 59–60.)  On or about October 24, 2017, Abdallah filed a dispute with Chex by fax according to the policies and procedures stated on the Chex website, asserting that he had recently been denied a bank account because his date of birth was wrong on his Chex report.  (*Id*. ¶ 60.)  Abdallah provided Chex with a copy of his driver's license and his social security card and asked that Chex correct his date of birth.  (*Id*.)

On November 11, 2017, Abdallah one more time wrote to LexisNexis to dispute the inaccurate information in his Accurint report. (*Id*. ¶ 47.) He wrote that he was having difficulty opening a checking account at local banks based on the erroneous report. He again provided his social security number, date of birth, and address, and asked that any other information that did not belong to him be removed from his Accurint report. (*Id*.)

On or about January 2, 2018, LexisNexis responded by once again claiming that LexisNexis is not a Consumer Reporting Agency and that federal law does not require it to correct inaccurate information contained in Accurint reports. (*Id*. ¶ 48.) As before, LexisNexis provided Abdallah with a new copy of his Accurint report, dated January 2, 2018. (*Id*. ¶ 49.) This report contained new and different inaccuracies, including but not limited to: incorrectly identifying Abdallah as being eighty years old; a section titled "others associated with subjects SSN" containing twenty-five listed names, birthdates, and social security numbers, fourteen of which were inaccurate; misidentifying Abdallah as his brother Ahamad; a section titled "address summary" containing six addresses and P.O. Boxes, two of which were inaccurate; not listing a home address for Abdallah, despite the fact that he lives in a home in Brooklyn; and a section titled "previous and non-verified addresses" containing six addresses and P.O. Boxes, two of which he had never used. (*Id*.) LexisNexis also provided Abdallah with a Benefit Consumer Disclosure Report dated January 3, 2018, which also contained inaccurate listings that misspelled Abdallah's name or contained the wrong social security number. (*Id*. ¶ 50.)

On January 26, 2018, Abdallah notified LexisNexis that the Benefit Consumer Disclosure Report contained inaccurate information, including misspelled names, incorrect addresses, and social security numbers. He once again enclosed a copy of his driver's license and requested the

incorrect information be removed from the report. (*Id.* ¶ 51.) As of the date of filing, LexisNexis had not replied to this request. (*Id.* ¶ 52.)

Subsequently, Abdallah attempted to open a savings account with Transportation Federal Credit Union. (*Id.* ¶ 62.) On March 12, 2018, Transportation Federal Credit Union denied his application for an account on the basis of a Chex report that stated that Abdallah's reported address is not a residential address, that his social security number was linked to other individuals, and that an Extended Fraud Alert had been placed on his credit report. (*Id.* ¶ 63.) Abdallah has never placed a fraud alert or credit freeze on his Chex report. (*Id.* ¶ 64.) Abdallah complained multiple times by telephone to Chex that his Chex report contained errors, that he had not placed a fraud alert or credit freeze on his Chex report, and asked that any such alert or freeze be removed. (*Id.* ¶ 65.)

In a letter dated April 12, 2018, Abdallah continued to pursue corrections to the errors in his Accurint report, again filing a dispute with LexisNexis requesting they correct the errors in his Accurint report and enclosing a copy of his driver's license and social security card. (*Id.* ¶ 53.) On May 9, 2018, LexisNexis asserted that the report was based on information from credit bureaus, courts, boat registration and property records, and the U.S. Coast Guard, and that Abdallah needed to reach out to these sources with questions about the underlying data. (*Id.* ¶ 54.) Abdallah had already established that the incorrect data did not come from the credit bureaus, has never registered a boat, and has no relationship with the U.S. Coast Guard. (*Id.*)

On October 12, 2018, Abdallah attempted to open an account with Justice Federal Credit Union. (*Id.* ¶ 67.) On October 30, 2018, the credit union denied his application because it was unable to verify Abdallah's identification based on reports from Chex and from Equifax. (*Id.* ¶

68.)  Abdallah filed a request for reconsideration of the denial on November 5, 2018, which was again rejected for the same reason on November 7, 2018.  (*Id*. ¶ 69.)

<u>The Amended Complaint</u>

Abdallah asserts five causes of action against Defendants.  His first two causes of action are brought under the FCRA.  First, he alleges that Defendants willfully failed to conduct a reasonable investigation in violation of 15 U.S.C. § 1681i.  (*Id*. ¶¶ 78–82.)  Second, he alleges that Defendants willfully failed to implement or follow reasonable procedures to assure maximum possible accuracy of their reports, in violation of 15. U.S.C. § 1681e(b).  (*Id*. ¶¶ 83–87.)  His third and fourth causes of action, respectively, bring parallel claims under the NYFCRA for willful failure to properly investigate in violation of N.Y. Gen. Bus. Law § 380-f and willful failure to establish or follow reasonable procedures in violation of N.Y. Gen. Bus. Law § 380-j. (*Id*. ¶¶ 88–95.)  Finally, in his fifth cause of action, Abdallah asserts that Defendants engaged in deceptive acts and practices in the conduct of their business, in violation of N.Y. Gen. Bus. Law § 349.  Abdallah asserts that as a result of Defendants' conduct, he has suffered damages in the form of financial harm and dignitary harm from the injury to his credit rating and reputation; inability to access credit, banking, and insurance; deprivation of economic activity; and inability to open or maintain consumer banking and credit accounts.  He seeks actual and punitive damages, and, for his claims brought under New York law, injunctive and declaratory relief.  (*Id*. ¶ 108.)

<u>The Instant Motions</u>

Each defendant now separately moves to dismiss the Amended Complaint pursuant to Rule 12(b)(6).  The Court will summarize each motion in turn.

In its motion to dismiss, LexisNexis first argues that Abdallah's FCRA and NYFCRA claims should be dismissed because Abdallah failed to plead sufficient facts to show that LexisNexis violated the law.  (LexisNexis Mot. (Doc. No. 30-1) at 11–17.)  According to LexisNexis, the Amended Complaint contains no allegations regarding "who ordered the reports, when and where each" event occurred, what injury Abdallah suffered, the procedures LexisNexis used to gather that information, "how those procedures failed to comply with the FCRA, or how it lacked such procedures."  (*Id*. at 13–14.)  Further, LexisNexis notes that Abdallah has failed to allege either willfulness or negligence.  (*Id*. at 15.)  LexisNexis also asserts that Abdallah's pleadings fail to demonstrate that Accurint reports are consumer reports or that LexisNexis is a consumer reporting agency.  (*Id*. at 15–17.)  Moreover, the FCRA and NYFCRA impose a two-year statute of limitations, which begins to run at the time a plaintiff discovers the violation; that statute of limitations has now run.  (*Id*. at 19–21.)  Finally, LexisNexis asserts that Abdallah's § 349 claim should be dismissed because Abdallah does not sufficiently plead that the disputed acts were consumer-oriented or had broad impact.  (*Id*. at 17–19.)

In response, Abdallah argues that the Amended Complaint contains more than enough detail to state claims under the FCRA and NYFCRA.  (Abdallah's LexisNexis Resp. (Doc. No. 30-2) at 9–16.)  Further, Abdallah argues he has plausibly alleged facts to support an inference of both negligence and reckless disregard in the failure to correct his Accurint report.  (*Id*. at 16–21.)  Abdallah also asserts that the Amended Complaint sufficiently alleges that Accurint reports are consumer reports and that LexisNexis is a Consumer Reporting Agency, and argues that LexisNexis may not escape liability solely based on the disclaimers on its websites.  (*Id*. at 21–25.)  Moreover, Abdallah asserts that because each re-report of inaccurate information in the Accurint reports is a separate violation with a separate statute of limitations period, and because

9

LexisNexis is estopped from asserting an FCRA statute of limitations if it insists it is not covered by the FCRA, the claims are not time-barred.  (*Id*. at 25–27.)  Finally, Abdallah states that he has properly pled his § 349 claim because LexisNexis's misrepresentations about Abdallah's personal information are replicable and put a large number of consumers at risk of similar harm.  (*Id*. at 27–30.)

In its motion, Chex first argues that Abdallah has failed to state a claim under § 1681i of the FCRA.  Chex argues that Abdallah's attempt to open a Business Savings Account cannot form the basis for an FCRA claim because it was a business transaction.  (Chex's Mem. (Doc. No. 29-1) at 7.)  Further, Chex claims it only had a duty to conduct an investigation concerning Abdallah's incorrect birthdate, as this was the only specific information Abdallah disputed with Chex.  (*Id*. at 7–8.)

Next, Chex argues that Abdallah failed to state a claim under § 1681e(b) because he alleges no fact to demonstrate that Chex failed to implement or follow reasonable procedures.  (*Id*. at 8–9.)  Similarly, due the same deficiencies in Abdallah's pleadings, Chex asserts that Abdallah has failed to plead sufficient facts in furtherance of his NYFCRA claims.  (*Id*. at 9.)  Moreover, Chex argues that Abdallah's FCRA and NYFCRA claims should be dismissed for failure to allege that Chex acted willfully or negligently under either statute.  (*Id*. at 10–11.)  Finally, Chex asserts that Abdallah has failed to state a claim under § 349 because he has failed to allege that the actions that form the basis of his complaint are consumer-oriented.  (*Id*. at 11–12.)

In his response, Abdallah argues that Chex had an obligation to investigate not only the incorrect birth date in his original complaint, but also all the incorrect information he reported to them in his subsequent complaints.  (Abdallah Chex Resp. (Doc. No. 29-2) at 11–12.)  Further,

Abdallah claims it is irrelevant that his initial dispute arose from an application for a business account, as the only inquiry required to determine whether the FCRA applies is whether the disputed report was compiled and intended to be used for a credit-related purpose as set forth under that statute.  (*Id*. at 7–11.)  Abdallah asserts that his allegations that Chex reported inaccurate information, even after it was notified that its report contained errors, is sufficient to state a claim for failure to implement or follow reasonable procedures at the motion to dismiss stage.  (*Id*. at 13–17.)  Additionally, Abdallah claims he has satisfied the pleading standards for both negligence and willfulness because such mental states can be inferred from the failure to reinvestigate a credit report after complaints of its inaccuracy.  (*Id*. at 18–19.)  Finally, Abdallah argues that § 349 is a broad provision covering a wide range of economic activity, including credit checks.  (*Id*. at 20.)

In its reply, Chex largely stands upon its prior briefing, with the addition of explaining that the disputed credit freeze placed upon Abdallah's Chex account could only have been placed there by Abdallah himself.  Chex argues that this is not in itself information about a consumer but rather a restriction on sharing information about a consumer, so it is not covered by § 1861i.  (Chex Reply (Doc. No. 29-3) at 7–9.)

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss a cause of action that "fail[s] to state a claim upon which relief can be granted."  In evaluating a Rule 12(b)(6) motion, the Court assumes the truth of the facts alleged in the nonmovant's pleading and draws all reasonable inferences in the nonmovant's favor.  *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).  Although all factual allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).  In all cases a plaintiff's complaint must include "enough facts to state a claim

to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

U.S. at 663 (citing *Twombly*, 550 U.S. at 570).  When ruling on a motion to dismiss under Rule

12(b)(6), the Court may consider only the "facts stated on the face of the complaint and in

documents appended to the complaint or incorporated in the complaint by reference, as well as

matters of which judicial notice may be taken." *Hertz Corp. v. City of New York,* 1 F.3d 121,

125 (2d Cir. 1993).

## DISCUSSION

### I.     LexisNexis

#### a.   Whether LexisNexis is covered by the FCRA and NYFCRA

The FCRA regulates "consumer reporting agencies" in their preparation and

dissemination of "consumer reports."  *See, e.g.*, 15 U.S.C. § 1681b (defining circumstances

under which a consumer reporting agency may issue a consumer report); *id*. § 1681e

(establishing procedures for disseminating consumer credit information); *id*. § 1681i (designating

procedures for resolving disputes with consumers).  The FCRA imposes civil liability upon users

and consumer reporting agencies that willfully or negligently violate the statute.  *Id*. §§ 1681n,

1681o.  Under the FCRA,

> The term "consumer reporting agency" means any person which, for monetary
> fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in
> part in the practice of assembling or evaluating consumer credit information or
> other information on consumers for the purpose of furnishing consumer reports to
> third parties ....

15 U.S.C. § 1681a; *see also* N.Y. Gen. Bus. Law § 380-a(e) (giving an identical definition for consumer reporting agencies under the NYFCRA).  In determining whether an entity is a consumer reporting agency, "a court must look to the totality of circumstances — in particular, to the actual 'activities of [the] company' — to determine whether it regularly assembles information 'for the purpose of regularly furnishing consumer reports to third parties.'" *Kidd v. Thomson Reuters Corp.*, 299 F. Supp. 3d 400, 407 (S.D.N.Y. 2017), *aff'd*, 925 F. 3d 99 (2d Cir. 2019) (citing FTC, Advisory Opinion to LeBlanc (June 9, 1998), available at http://www.ftc.gov /os/statutes/fcra/leblanc.shtm.).

A "consumer report" is defined as

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's [creditworthiness], credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—
> (A) credit or insurance to be used primarily for personal, family, or household purposes;
> (B) employment purposes; or
> (C) any other purpose authorized under section 604.

15 U.S.C. § 1681a; *see also* N.Y. Gen. Bus. Law § 380-a(c).  "Courts recognize that the first element of the FCRA's definition of consumer report . . . does not seem very demanding, for almost any information about consumers arguably bears on their personal characteristics or mode of living." *Adams v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 08-CV-4708 (RMB) (KW), 2010 U.S. Dist. LEXIS 47123, at *17 (D.N.J. May 12, 2010) (internal quotations omitted). Second, "[c]ourts consider both the purpose for which the information contained in the report was used or expected to be used or collected, as well as how a third party actually used the information, when determining whether a document qualifies as a consumer report under the Act." *Id*. at *19 (citing 15 U.S.C. § 1681a(d)(1) and collecting cases).

Here, Abdallah pleads sufficient facts to plausibly allege that LexisNexis is a consumer reporting agency and the Accurint Reports are consumer reports within the meaning of the statute.  Abdallah alleges that LexisNexis collects voluminous data regarding consumers' credit history, known associates, past addresses, criminal records, aliases, and many other kinds of information – all data which bears upon consumers' personal characteristics and mode of living – and transmits that information in Accurint reports that it supplies to, among others, banks and credit unions.  He further alleges that these reports were used, and were intended to be used, by numerous banks and credit unions to close his accounts or to deny him loans or accounts based on the information contained therein.  These allegations, if true, are sufficient to plausibly allege that the Accurint reports were consumer reports and LexisNexis is a consumer reporting agency.

In arguing that it is not governed by either the FCRA or the NYFCRA because it is not a consumer reporting agency and the Accurint reports are not consumer reports, LexisNexis points to its website, which contains disclaimers stating that the Accurint reports are not intended to be consumer reports and may not be used as a factor in determining eligibility for credit, insurance, employment, or any other impermissible purpose under the FCRA.  (LexisNexis Mot. at 15–17.) These disclaimers are not dispositive and are not sufficient to warrant dismissal.  *See Kidd*, 299 F. Supp. 3d at 406 ("disclaimers alone are not enough for an entity that otherwise [may qualify] as a CRA to avoid the reach of the statute.").

### b.  Statute of Limitations

The FCRA and the NYFCRA contain identical statutes of limitations, which are triggered by the earlier of (i) two years from the date the plaintiff discovers the violation, *see* 15 U.S.C. § 1681p(1), or (ii) five years from the date of the violation, *see* 15 U.S.C. § 1681p(2); *see also* N.Y. Gen. Bus. Law § 380-n.  Courts measure this two-year period from the date the plaintiff

discovered "all of the material facts necessary to identify a violation," not when the plaintiff discovered that those facts constituted a legal violation. *Trans Union LLC v. Lindor*, 393 F. App'x 786 at *3–4 (2d Cir. 2010) (summary order). However, "each alleged failure of [d]efendant[] to comply with [its] FCRA obligations constitutes a separate FCRA violation, even though the violations stem from the same allegedly false or inaccurate credit information." *Jenkins v. Chase Bank USA, N.A.*, 14-CV-5685 (SJF) (AKT), 2015 U.S. Dist. LEXIS 109723, at *19 n.6 (E.D.N.Y. Aug. 19, 2015) (collecting cases). Abdallah filed the instant action on June 19, 2019. (Compl. (Doc. No. 1).) Accordingly, the statute of limitations bars any claims brought under the FCRA or the NYFCRA arising from events that occurred prior to June 19, 2017.

### c. FCRA and NYFCRA Claims

Under the FCRA, a plaintiff may bring a private action for the negligent, *see* 15 U.S.C. § 1681o, or willful, *see* 15 U.S.C. § 1681n, violation of the duties or requirements imposed by the statute. Abdallah alleges that LexisNexis willfully failed to conduct a reasonable investigation in violation of 15 U.S.C. § 1681i, and willfully failed to implement or follow reasonable procedures to assure maximum possible accuracy of their reports, in violation of 15 U.S.C. § 1681e(b). (Am. Compl. ¶¶ 78–87.) He brings identical claims under the NYCFRA. "The provisions of the NYFCRA are essentially identical to those of the FCRA, and have been construed using the same standards applicable to the federal act." *Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 829 n.6 (E.D.N.Y. 1994).

### i. Reasonable Reinvestigation

Section 1681i(a) of the FCRA provides, in relevant part, that when a consumer disputes the accuracy of an item on his credit report, and directly notifies the credit reporting agency of that dispute, the agency shall "free of charge, conduct a reasonable reinvestigation to determine

whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file … before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller." 15 U.S.C. § 1681i(a)(1)(A).  This statutory duty is triggered "only by direct requests from consumers."  *Podell v. Citicorp Diners Club*, 112 F.3d 98, 104 (2d Cir. 1997).  Section 1681i governs disputes regarding "the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency."  *Id.*

Here, Abdallah wrote to LexisNexis on November 11, 2017, and on April 12, 2018, disputing the names, addresses, and social security numbers that had been reported in his Accurint report and requesting it be corrected.  To aid in the correction of his file, Abdallah enclosed with each of these writings his social security number, date of birth, and address. However, LexisNexis responded to these letters – in the case of the first response, outside the 30-day period set forth by the statute – by denying that it had any obligation to correct the disputed information.  LexisNexis also responded to Abdallah's 2017 dispute by sending both a new copy of his Accurint report and a Benefit Consumer Disclosure Report, both of which were riddled with errors, including erroneous names, addresses, and social security numbers.  These facts plausibly state a claim for willful failure to reinvestigate or delete incorrect information, in violation of U.S.C. § 1681i(a) and N.Y. Gen. Bus. Law § 380-f.

## ii.  Reasonable Procedures

Under § 1681e(b), "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  To state a claim under § 1681e(b), a plaintiff must plead sufficient facts to show that "(1) the credit reporting agency was negligent

16

[or willful] in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the credit reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the credit reporting agency's negligence proximately caused the plaintiff's injury." *Whelan*, 862 F. Supp. at 829.

Here, there is nothing in the pleadings to show what injury, if any, Abdallah suffered during the statute of limitations period.  Though he alleges that he informed LexisNexis that he had been having trouble opening bank accounts in his 2017 correspondence, he provides no information about when he applied to these banks.  The most recent injury he describes as a result of an erroneous Accurint report is the closure of his bank accounts at Bank of America in September 2016, which falls outside of the relevant statutory period.  Accordingly, Abdallah has failed to state a claim for failure to follow reasonable procedures under either the FCRA or the NYFCRA.

### d.  Section 349 Claim

To state a claim under General Business Law § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. 2012).  Consumer-oriented conduct "is defined as conduct that could affect similarly situated customers ….  Although the plaintiff is not required to allege a pattern of conduct or repetitive deceptive trade practices, [he] must allege a broader impact on consumers at large." *Designers N. Carpet, Inc. v. Mohawk Indus.*, 153 F. Supp. 2d 193, 198 (E.D.N.Y. 2001) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25–26 (N.Y. 1995)) (internal citations and quotation marks omitted).).  Private contract disputes do not fall within the ambit of § 349; an allegation

17

that misleading practices in a private contract "may mislead other members of the public" is not sufficient to support a § 349 claim where "there is no indication of actual damage to the public as a result." *Saul v. Cahan*, 999 N.Y.S.2d 798 (N.Y. Sup. Ct. 2014), *aff'd*, 61 N.Y.S.3d 265 (2017).

Here, Abdallah fails to allege facts suggesting that the dissemination of his Accurint report to various banks is consumer-oriented conduct within the meaning of § 349.  Abdallah asserts that LexisNexis collects information on "over 132 million individual consumers and routinely furnishes reports to third-parties about these individuals, but as reflected in the experiences of Plaintiff, has failed to establish quality control procedures or sufficient mechanisms for reasonably investigating inaccurate information … Defendants' conduct is of a recurring nature and has a broad impact on consumers at large."  (Am. Compl. ¶¶ 103, 107.) Abdallah cannot state a § 349 claim merely by extrapolating from his experiences disputing inaccurate reports of personal information in order to assert that LexisNexis's alleged conduct actually had broader impact on consumers at large.  Abdallah has therefore failed to state a claim under § 349.

## II.    Chex

Here, as above, Abdallah alleges that Chex willfully failed to conduct a reasonable investigation in violation of 15 U.S.C. § 1681i, and willfully failed to implement or follow reasonable procedures to assure maximum possible accuracy of their reports, in violation of 15 U.S.C. § 1681e(b).  The elements of these claims are set forth in Section I.C., above.

### a.  Reasonable Reinvestigation

Here, Abdallah alleges that Chex provided a report to Bethpage Federal Credit Union that contained an incorrect birth date, causing Abdallah's application for a Business Savings Account to be denied.  Abdallah then filed a complaint with Chex, asking it to correct his birthdate, and

providing it with identification to enable that correction.  Subsequently, Abdallah's application for an account at Transportation Federal Credit Union was denied due to other inaccuracies that did not include Abdallah's birth date, such as errors in his residential address, social security number, and an incorrect report that a fraud alert had been placed upon his account.  Though Abdallah complained multiple times via telephone that "his Chex Systems report contained errors" and that he had not placed a freeze on his account, Chex failed to correct the report.

These allegations are sufficient to state a claim under § 1681i.  Abdallah identifies two specific errors that he brought to Chex's attention.  First, Abdallah filed a dispute with Chex regarding an inaccurate birthdate; he does not state in his Amended Complaint whether Chex ever reported this error again after he disputed it, so this cannot form the basis of a § 1681i claim.  Second, Abdallah complained via telephone about the erroneous credit freeze on his account, but this is not covered by Section 1681i.  *See Edeh v. Equifax Info. Servs., LLC*, 919 F. Supp. 2d 1006, 1012 (D. Minn. 2013) ("a security freeze is not itself information on a consumer, but rather is a status notification that prevents the release of any information on a consumer.  Section 1681i, therefore, does not apply to disputes regarding the presence of a security freeze.").  However, Abdallah also asserts that his Chex report contained multiple other errors, including that his reported address is not a residential address and that his social security number was linked to other individuals.  (Am. Compl. ¶ 63.)  Although Abdallah told Chex that his report "contained errors" "multiple times by telephone," Chex continued to generate erroneous reports, and Abdallah was subsequently denied an account at Justice Federal Credit Union based on these same errors.  These facts plausibly state a claim for failure to reinvestigate or delete incorrect information, in violation of § 1681i(a) and N.Y. Gen. Bus. Law § 380-f.

### b.  Reasonable Procedures

The standard for stating a claim for failure to follow reasonable procedures under the FCRA and NYFCRA is set forth in Section I.C.ii, above.  A credit reporting agency is not held strictly liable under the FCRA merely for reporting inaccurate information; "rather, the consumer must show that the agency failed to follow reasonable procedures in generating the inaccurate report."  *Whelan*, 862 F. Supp. at 829.  Abdallah asserts that Chex "has not undertaken any steps to correct its data collection methods or check the accuracy of its data sources with respect to the inaccuracies that appear on Mr. Abdallah's Chex Systems report."  (Am. Compl. ¶¶ 71–72.)  This threadbare recitation, without more, cannot form the basis of a reasonable procedures claim.  Though Abdallah argues in his briefing that an allegation of repeated incorrect information creates a plausible inference of failure to follow reasonable procedures, that is not the law in this Circuit; the plaintiff bears the burden to show that the agency failed to follow reasonable procedures in generating the report.  The Amended Complaint contains no facts regarding the procedure Chex used in generating its erroneous report.  Accordingly, Abdallah has failed to state a claim for failure to follow reasonable procedures against Chex.

### c.  Section 349 Claim

"In New York law, the term 'consumer' is consistently associated with an individual or natural person who purchases goods, services or property primarily for 'personal, family or household purposes.'"  *Cruz v. NYNEX Info. Res.*, 263 A.D.2d 285, 289 (App. Div. 1st Dept. 2000) (quoting N.Y. General Business Law §§ 399-c, 399-p); *see also Genesco Entm't, Div. of Lymutt Indus., Inc. v. Koch*, 593 F. Supp. 743, 751 (S.D.N.Y. 1984) ("The typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods …").  Here, Abdallah fails to state a

20

claim under N.Y. Gen. Bus. Law § 349 because he has failed to allege that the dissemination of his Chex report to banks is consumer-oriented.  Though Abdallah alleges that "Chex Systems has compiled information of 300 million individual consumers and routinely furnishes reports to third-parties about these individuals (including over 80% of the banks in the United States)," this wide-spread practice has no clear relation to consumer purchases of goods or services; this arrangement between Chex and many major banks falls outside of the ambit of consumer-oriented practices governed by § 349.  Accordingly, this claim is dismissed.

## CONCLUSION

For the reasons set forth above, LexisNexis's motion to dismiss is granted with respect to Claims Two, Four, and Five and denied with respect to Claims One and Three.  Chex's motion to dismiss is granted with respect to Claims Two, Four, and Five and denied with respect to Claims One and Three.  This matter is recommitted to Magistrate Judge Scanlon for pre-trial supervision, including settlement discussion, as appropriate.

SO ORDERED.

Dated: Brooklyn, New York
       March 30, 2021

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge

21