UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------
ABRAHAM ABDALLAH, *individually and on
behalf of all others similarly situated*,

                          Plaintiff,

            v.

LEXISNEXIS RISK SOLUTIONS FL INC. and
CHEX SYSTEMS, INC.,

                        Defendants.

--------------------------------------------------------------

                        **MEMORANDUM & ORDER**

                        19-CV-3609 (MKB)

MARGO K. BRODIE, United States District Judge:

        Plaintiff Abraham Abdallah commenced the above-captioned action against Defendants

LexisNexis Risk Solutions FL Inc. ("LexisNexis") and Chex Systems, Inc. ("Chex"), on June 19,

2019, and filed an amended complaint on December 26, 2019, alleging that Defendants violated

sections 1681i and 1681e(b) of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. (the

"FCRA"); sections 380-f and 380-j of the New York General Business Law ("GBL") — part of

the New York Fair Credit Report Act ("NYFCRA"); and section 349 of the GBL.  (Am. Compl.

¶¶ 78–108, Docket Entry No. 21.)

        On May 6, 2020, LexisNexis and Chex each moved separately to dismiss Plaintiff's

claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Chex Mot. to

Dismiss, Docket Entry No. 29; LexisNexis Mot. to Dismiss, Docket Entry No. 30.)  By

Memorandum and Order dated March 30, 2021 (the "March 2021 Decision"), Judge Roslynn R.

Mauskopf granted in part and denied in part LexisNexis' motion and granted in part and denied

in part Chex's motion.  (Mar. 2021 Decision, Docket Entry No. 35.)  Judge Mauskopf denied

Defendants' motion with respect to Plaintiff's claim that Defendants willfully failed to conduct a

reasonable reinvestigation in violation of section 1681i of the FCRA and section 380-f of the GBL.  (*Id.* at 15–16, 18–19.)  Judge Mauskopf granted Defendants' motion with respect to Plaintiff's claim that Defendants: (1) failed to follow reasonable procedures to assure maximum possible accuracy in violation of section 1681e(b) of the FCRA and section 380-j of the GBL, (*id.* at 16–17, 20); and (2) engaged in deceptive acts and practices in the conduct of their business, in violation of section 349 of the GBL, (*id.* at 17–18, 20–21).

On May 21, 2021, Plaintiff moved for reconsideration as to his dismissed FCRA and NYFCRA claims and sought leave to file a second amended complaint to add allegations regarding (1) credit and bank account closures resulting from Defendants' dissemination of consumer reports about Plaintiff after the instant case commenced and (2) details regarding account closures and denials that occurred within two years of commencing this action.  (Pl.'s Mot. for Reconsideration ("Pl.'s Mot."), Docket Entry No. 44; Pl.'s Mem. in Supp. of Pl.'s Mot. ("Pl.'s Mem.") 1 & n.1, Docket Entry No. 44-1.)[1]  Defendants oppose the motion.  (Chex's Opp'n to Pl.'s Mot. ("Chex Opp'n"), Docket Entry No. 48; LexisNexis' Opp'n to Pl.'s Mot. ("LexisNexis Opp'n"), Docket Entry No. 49.)  For the reasons set forth below, the Court denies Plaintiff's motion for reconsideration.

## I.   Background

The Court assumes familiarity with the facts as detailed in the March 2021 Decision and provides only a summary of the pertinent facts.  (*See* Mar. 2021 Decision 1–8.)

LexisNexis operated at all relevant times as a nationwide Consumer Reporting Agency ("CRA") within the meaning of 15 U.S.C. § 1681a(f) and a Consumer Reporting Agency or

---

[1]  The case was reassigned to the undersigned on July 9, 2021.  (Notice of Reassignment dated July 9, 2021.)

Consumer Credit Reporting Agency within the meaning of the NYFCRA, GBL §§ 380-a(e) and k. (Am. Compl. ¶ 21.) Chex also operated at all relevant times as a nationwide Specialty Consumer Reporting Agency within the meaning of 15 U.S.C. § 1681a(f) and a Consumer Reporting Agency or Consumer Credit Reporting Agency within the meaning of NYFCRA, GBL §§ 380-a(e) and k. (*Id.* ¶ 24.)

### a.   Allegations regarding LexisNexis

LexisNexis provides reports "to various financial institutions through its Accurint program, a consumer reporting service," containing information regarding a consumer's "bankruptcy history"; "income and property ownership"; "criminal history"; "purported personal associations and work history"; and "co-habitant, neighbor, and neighborhood data." (*Id.* ¶¶ 28–29.)

At some unspecified time in 2014, Plaintiff "learned that his mortgage application had been denied in reliance on an Accurint report prepared by LexisNexis." (*Id.* ¶ 30.) When Plaintiff obtained a copy of the Accurint report, "he discovered [that it was] filled with inaccurate and false information." (*Id.* ¶ 31.) Plaintiff called LexisNexis to correct the report and, in "a follow-up letter" from LexisNexis to Plaintiff dated June 10, 2014, LexisNexis told Plaintiff "that the erroneous information in his Accurint report had come from 'all three credit bureaus' (i.e., Equifax, Experian, and TransUnion)." (*Id.*) LexisNexis advised Plaintiff to contact these credit bureaus directly. (*Id.*) However, when Plaintiff did, "he learned that the reports from those three credit bureaus did not, in actuality, contain *any* of the inaccuracies found in the Accurint report." (*Id.*) On July 8, 2014, Plaintiff wrote to LexisNexis to dispute the contents of his Accurint report, and asked LexisNexis to "delete all of this incorrect information." (*Id.* ¶ 32.) In an effort to facilitate correction of the Accurint report, Plaintiff also

enclosed with his July 8, 2014 letter "a copy of the Accurint report on which he had explicitly marked everything that was 'incorrect or [did] not belong to [him],' all of which he demanded to be 'removed.'"  (*Id.* ¶ 33 (alterations in original).)  In addition, Plaintiff provided LexisNexis "with summary pages of reports prepared by Equifax, Experian, and TransUnion, showing that the false Accurint information did not originate with them" and confirmed that "he did not 'use any other names but [his] own exactly as written Abraham A. Abdallah [a]nd only [his] social security number and address [as provided].'"  (*Id.* (alterations in original).)

On July 24, 2014, LexisNexis responded to Plaintiff's letter, reiterating that "the false information was attributable to the three credit bureaus," and stating that LexisNexis "is 'NOT a Consumer Reporting Agency,'" and therefore, is "not governed by the [FCRA]," and "could not and would not 'correct or change' the abundance of erroneous information revealed by [Plaintiff]."  (*Id.* ¶ 34.)

"After numerous banks relied upon the Accurint report when refusing to open accounts" for Plaintiff, he again wrote to LexisNexis on January 5, 2015, requesting "a copy of his current Accurint report . . . to dispute the inaccurate identifying information."  (*Id.* ¶ 36.)  In addition, Plaintiff "again provided LexisNexis the proper spelling of his name" and his correct address, and again requested that LexisNexis "delete all the incorrect addresses other than the one [provided]" and "remove all the names on the report other than [his] own."  (*Id.* (last alteration in original).)  On or about February 3, 2015, LexisNexis responded to Plaintiff, "denying that it is a [CRA] and asserting that federal law does not require LexisNexis to correct inaccurate information."  (*Id.* ¶ 37.)  LexisNexis also provided Plaintiff with a copy of his Accurint report dated February 3, 2015, which again contained "numerous inaccuracies."  (*Id.* ¶ 38.)

On February 2, 2016, Plaintiff again wrote to LexisNexis to dispute the inaccurate information contained in the Accurint report, and indicated that he was encountering difficulties opening bank accounts as a result of the report.  (*Id.* ¶ 39.)  Plaintiff provided a copy of the report that highlighted the inaccurate information, as well as a copy of his driver's license and social security card, with a demand for the "'immediate[]' removal of the 'incorrect information' he identified in the report."  (*Id.* ¶ 40 (alteration in original).)

On or about March 21, 2016, LexisNexis responded to Plaintiff by reiterating that LexisNexis is not a CRA and it would not verify or correct inaccurate information.  (*Id.* ¶ 41.) LexisNexis also provided Plaintiff with a new copy of his Accurint report, dated March 21, 2016, which contained a number of "new and different inaccuracies."  (*Id.* ¶ 42.)  On or about April 1, 2016, LexisNexis sent Plaintiff another letter in response to his "continued disputes," again asserting that "it is not a [CRA] and it would not verify or correct inaccurate information."  (*Id.* ¶ 43.)  In addition, LexisNexis advised Plaintiff that LexisNexis had obtained the address information from "credit bureaus, voter registration records, and utility records" and that Plaintiff should contact those sources in order to correct the Accurint report.  (*Id.* ¶ 44.)

Plaintiff alleges that, on information and belief, and in reliance on the Accurint report prepared by LexisNexis, in June and July of 2016, Citibank closed nine accounts held by Plaintiff and his wife, and in September of 2016, Bank of America closed three accounts held by Plaintiff.  (*Id.* ¶¶ 45–46.)

On November 11, 2017, Plaintiff wrote to LexisNexis to dispute the inaccurate information in the Accurint report, indicating that he was "having difficulty opening a checking account at local banks based on [the Accurint] report" and that banks relied on the Accurint report "to grant credit or employment, despite the claims of LexisNexis that this did not occur."

(*Id.* ¶ 47.)  In the letter, Plaintiff provided his social security number, date of birth, and address, affirmed "the only names" he uses, and again asked that LexisNexis "remove all the names, addresses and incorrect [social security] numbers not belonging to [him]," making clear that "[a]ny other names and addresses, [social security numbers], [dates of birth] other than [what he provided] is not [his] or incorrect."  (*Id.*)

On or about January 2, 2018, LexisNexis responded by once again asserting that it is not a CRA and that federal law does not require it to correct inaccurate information within Accurint reports.  (*Id.* ¶ 48.)  LexisNexis provided Plaintiff with a copy of his Accurint report, dated January 2, 2018, which contained a number of additional inaccuracies.  (*Id.* ¶ 49.)  In addition, LexisNexis provided Plaintiff "a Benefit Consumer Disclosure Report dated January 3, 2018," which likewise contained inaccuracies.  (*Id.* ¶ 50.)  On January 26, 2018, Plaintiff notified LexisNexis that the Benefit Consumer Disclosure Report contained inaccurate information, "implored LexisNexis 'to please remove all of this . . . incorrect information,'" and noted that he had asked LexisNexis "time and time again to remove these incorrect items."  (*Id.* (alteration in original).)  Plaintiff alleges that "[t]o date, upon information and belief, LexisNexis has not replied to this dispute."  (*Id.* ¶ 52.)

On April 12, 2018, Plaintiff filed a dispute with LexisNexis to correct the inaccuracies in the Accurint report and provided all the relevant information to facilitate the correction.  (*Id.* ¶ 53.)  On May 9, 2018, LexisNexis responded, alleging that "[u]pon review of the information, [they had] found that [c]redit [b]ureaus, [c]ourts, [b]oat [r]egistration, [p]roperty [r]ecords, and U.S. Coast [G]uard reported the data" contained in the Accurint report and advised Plaintiff to contact these entities directly.  (*Id.* ¶ 54.)  Plaintiff, however, "has established that none of the [c]redit [b]ureaus reported the incorrect information contained in the Accurint report, he has

never registered a boat, and he has never had any sort of relationship with the U.S. Coast Guard." (*Id.*)  "To date, LexisNexis has not taken meaningful steps to correct its errors or to respond to [Plaintiff's] concerns."  (*Id.* ¶ 55.)

### b.  Allegations regarding Chex

Plaintiff alleges that Chex also caused him "to unjustifiably be denied service by multiple financial institutions and failed to correct their errors as required by law."  (*Id.* ¶ 58.)

On October 19, 2017, upon information and belief, Bethpage Federal Credit Union refused to open a Business Savings Account for Plaintiff as a result of an erroneous credit report from Chex.  (*Id.* ¶¶ 59–60.)

On or about October 24, 2017, Plaintiff filed a dispute with Chex, asserting that he "was recently denied a bank account from BethPage Federal Credit Union because they stated [his] date of birth was wrong" in the Chex report.  (*Id.* ¶ 61.)  Plaintiff provided Chex with "a copy of his driver[']s license and [social security] card," and asked Chex to "correct [his] date of birth to [October 30, 1968]."  (*Id.*)

On March 12, 2018, in reliance on the Chex report, Transportation Federal Credit Union denied Plaintiff's application to open a savings account because his "reported address [was] not a residential address, . . . his [s]ocial [s]ecurity [n]umber was linked to other individuals, and . . . an Extended Fraud Alert had been placed on his credit report."  (*Id.* ¶ 63.)  Plaintiff "never placed a fraud alert or credit freeze" on his Chex report and he "complained multiple times by telephone to [Chex] that his . . . report contained errors, he had not placed a fraud alert or credit freeze on his . . . report, and that any such alert or freeze should be removed."  (*Id.* ¶¶ 64–65.) Chex "continued to report erroneous information about [Plaintiff] on his Chex . . . reports, including that he had placed a fraud alert on his report."  (*Id.* ¶ 66.)

Plaintiff "attempted to open an account with Justice Federal Credit Union on October 12, 2018," but "on October 30, 2018, Justice Federal Credit Union denied [his] application" as they were "unable to verify [Plaintiff's] identification based on reports from Chex . . . (as well as from Equifax Credit Information Services)." (*Id.* ¶¶ 67–68.) On November 5, 2018, Plaintiff filed a request for Justice Federal Credit Union to reconsider its denial, which was rejected on the same basis on November 7, 2018. (*Id.* ¶ 69.) "Upon information and belief," the reports Chex provided to Justice Federal Credit Union contained the same errors about which Plaintiff had complained about to Chex, and Chex "has not conducted a reasonable reinvestigation of [Plaintiff's] disputes" or "undertaken any steps to correct its data collection methods or check the accuracy of its data sources . . . or ensure compliance with procedures that would lead to maximum possible accuracy in its consumer reports." (*Id.* ¶¶ 70–72.)

## II. Discussion

### a. Standard of review

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Van Buskirk v. United Grp. of Cos.*, 935 F.3d 49, 54 (2d Cir. 2019) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)); *see also* Local Civ. R. 6.3 (providing that the moving party must "set[] forth concisely the matters or controlling decisions which counsel believes the [c]ourt has overlooked").

It is thus well-settled that a motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking [another] bite at the apple." *U.S. for Use & Benefit of Five Star Elec. Corp. v.*

*Liberty Mut. Ins. Co.*, 758 F. App'x 97, 101 (2d Cir. 2018) (quoting *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012)).  "A motion for reconsideration is 'neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made.'"  *Salveson v. JP Morgan Chase & Co.*, 166 F. Supp. 3d 242, 248 (E.D.N.Y. 2016) (quoting *Simon v. Smith & Nephew, Inc.*, 18 F. Supp. 3d 423, 425 (S.D.N.Y. 2014)), *aff'd*, 663 F. App'x 71 (2d Cir. 2016).

> **b.   Reasonable procedures in violation of the FCRA and NYFCRA**

Plaintiff argues that reconsideration is warranted because as recognized in *Weiss v. Equifax, Inc.*, No. 20-CV-1460, 2020 WL 3840981 (E.D.N.Y. July 8, 2020), "at the pleading stage, there is an inherent information asymmetry" between the plaintiff and the defendants, such that the question of whether an inaccurate report was generated by following reasonable procedures should be generally left to the jury to resolve.  (Pl.'s Mem. 7–8.)  In support, Plaintiff contends that "charging a [p]laintiff with detailing the procedures (or lack thereof) adopted and followed by [d]efendants imposes a heightened pleading standard beyond plausibility," (*id.* at 9 (collecting cases)), and the "inaccuracies identified in the consumer reports concerning [Plaintiff] generated and disseminated by [LexisNexis] and Chex are precisely the sort of 'obviously incorrect information' the repeated reporting of which raises a plausible inference of a failure to maintain reasonable procedures for ensuring maximum possible accuracy," (*id.* at 10 (citing *Wenning v. On–Site Manager, Inc.*, No. 14-CV-9693, 2016 WL 3538379, at *16 (S.D.N.Y. June 22, 2016).)  In addition, Plaintiff contends that unlike the instant case, "[w]here Courts have dismissed failure to adopt or follow reasonable procedures claims based upon pleadings alone, they have done so largely on the ground that the complaint failed to point to an inaccuracy."  (*Id.* at 10–11 (collecting cases).)  Plaintiff also argues that the March 2021 Decision's "reliance on [*Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 829 (E.D.N.Y. 1994)] was

9

misplaced . . . [because] *Whelan* was decided on summary judgment after extensive discovery on the policies and procedures of the [d]efendants had been completed and, in the case of one CRA, where [p]laintiff failed to notify the CRA of its error."  (*Id.* at 12.)

Defendants contend that because "Plaintiff does not argue that there has been an intervening *change* in the *controlling* law governing the pleading requirements under the FCRA," but instead relies on "persuasive authority" in seeking reconsideration, he "provides no authority warranting reconsideration of his FCRA claims."  (LexisNexis Opp'n 5–6; *see also* Chex Opp'n 3.)  In addition, Chex argues that *Weiss* is "not controlling," and that "it conflicts with other Eastern District of New York cases that were previously cited by Chex and relied upon by this Court in finding that Plaintiff's 'threadbare recitation' of Chex's alleged failure to follow reasonable procedures was insufficient."  (Chex Opp'n 4 (quoting Mar. 2021 Decision 20).)  Chex also argues that Plaintiff "waived" the argument that "[d]istrict [c]ourts in the Second Circuit — as well as other [c]ircuit [c]ourts — have held that the reasonableness of a CRA's procedures are presumptively subject to a jury determination," because he did not raise it in his opposition to Chex's motion to dismiss.  (*Id.* at 4–5 (collecting cases).)

Section 1681e(b) of the FCRA imposes a duty on CRAs "to assure maximum possible accuracy of the information concerning the individual about whom the report relates" whenever the agency prepares a consumer report.[2]  15 U.S.C. § 1681e(b); *Podell v. Citicorp Diners Club,*

---

[2]  A "consumer report" is defined as:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for — (A) credit or insurance to be used primarily for personal, family,

*Inc.*, 112 F.3d 98, 104 (2d Cir. 1997) (quoting same); *Gross v. Private Nat'l Mortg. Acceptance Co., LLC*, 512 F. Supp. 3d 423, 426 (E.D.N.Y. 2021) ("[Section] 1681e(b) provides that '[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.'" (second alteration in original) (quoting 15 U.S.C. § 1681e(b))). "Section 380-j(e) of the NYFCRA offers substantially similar language, and § 380-k provides that every 'reporting agency shall maintain reasonable procedures designed to avoid violations of [section 380-j(e)].'" *Wimberly v. Experian Info. Sols., Inc.*, No. 18-CV-6058, 2019 WL 6895751, at *5 (S.D.N.Y. Dec. 17, 2019) (quoting GBL § 380-k); *see also Ogbon v. Beneficial Credit Servs., Inc.*, No. 10-CV-3760, 2013 WL 1430467, at *7 n.6 (S.D.N.Y. Apr. 8, 2013) (noting that "[b]ecause the language of [NYFCRA § 380-j(e)] is substantially similar to the parallel federal provision, it must be construed the same way" (citing *Scott v. Real Estate Fin. Grp.*, 183 F.3d 97, 100 (2d Cir. 1999))).

In order to succeed on a claim under section 1681e(b), a plaintiff must show that:

> (1) the consumer reporting agency was negligent or willful in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury.

*Phipps v. Experian*, No. 20-CV-3368, 2020 WL 3268488, at *2 (S.D.N.Y. June 15, 2020) (quoting *Gestetner v. Equifax Info. Servs., LLC*, No. 18-CV-5665, 2019 WL 1172283, at *2 (S.D.N.Y. Mar. 13, 2019)); *Anderson v. Experian*, No. 19-CV-8833, 2019 WL 6324179, at *3 (S.D.N.Y. Nov. 26, 2019) (same); *Wenning*, 2016 WL 3538379, at *8 (same); *see also Okocha v.*

---

or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).

*Trans Union LLC*, No. 08-CV-3107, 2011 WL 2837594, at *5 (E.D.N.Y. Mar. 31, 2011)

(analyzing NYFCRA § 380-k claim under FCRA § 1681e(b) standard).

"[T]he threshold question is whether the challenged credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary." *Wimberly*, 2019 WL 6895751, at *5 (quoting *Khan v. Equifax Info. Servs., LLC*, No. 18-CV-6367, 2019 WL 2492762, at *2 (E.D.N.Y. June 14, 2019)); *Watson v. Caruso*, 424 F. Supp. 3d 231, 244 (D. Conn. 2019) (same); *Neclerio v. Trans Union, LLC*, 983 F. Supp. 2d 199, 209 (D. Conn. 2013) (same); *Collins v. Experian Credit Reporting Serv.*, 494 F. Supp. 2d 127, 135 (D. Conn. 2007) ("Every circuit to consider the question has agreed that this threshold showing is fundamental to the success of a claim under § 1681e(b)." (collecting cases)). However, merely reporting inaccurate information is insufficient to give rise to liability under the FCRA, as the Act is not a strict liability statute. *See* 15 U.S.C. §§ 1681o, 1681n; *Cohen v. Equifax Info. Servs., LLC*, No. 18-CV-6210, 2019 WL 5200759, at *5 (S.D.N.Y. Sept. 13, 2019) ("[A] credit reporting agency is not held strictly liable under the FCRA merely for reporting [inaccurate information]; rather, *the consumer must show* that the agency failed to follow reasonable procedures in generating the inaccurate report." (quoting *Whelan*, 862 F. Supp. at 829)); *Gaft v. Mitsubishi Motor Credit of Am.*, No. 07-CV-527, 2009 WL 3148764, at *9 (E.D.N.Y. Sept. 29, 2009) ("However, an inaccurate entry of credit information, in and of itself, is not a violation of the FCRA; rather, . . . plaintiff must allege that the [CRAs] failed, through negligence or intention, to follow reasonable procedures to ensure the accuracy of the information.").

Although the Second Circuit has yet to address the issue, "[t]he overwhelming weight of authority holds that a credit report is inaccurate . . . either when it is patently incorrect *or* when it

is misleading in such a way and to such an extent that it can be expected to have an adverse effect' on credit decisions."  *Gross*, 512 F. Supp. 3d at 426 (quoting *Wenning*, 2016 WL 3538379, at *9); *Kilpakis v. JPMorgan Chase Fin. Co.*, 229 F. Supp. 3d 133, 142 (E.D.N.Y. 2017) ("[T]his [c]ourt finds that the more flexible approach mandated by the 'materially misleading' standard is appropriate, and provides a method of evaluating compliance with the FCRA that is more closely aligned than its rigid counterpart with the statute's purpose of addressing the 'serious problem in the credit reporting industry . . . of inaccurate or *misleading* information.'" (quoting *Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 40 n.4 (D.C. Cir. 1984))); *see also Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 902 (3d Cir. 2011) ("A report is inaccurate when it is 'patently incorrect' or when it is 'misleading in such a way and to such an extent that it can be expected to [have an] adverse[]' effect." (alterations in original) (quoting *Dalton v. Cap. Associated Indus. Inc.*, 257 F.3d 409, 415 (4th Cir. 2001))); *Saunders v. Branch Banking & Tr. Co. of VA*, 526 F.3d 142, 148 (4th Cir. 2008) ("[A] consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression." (citing *Dalton*, 257 F.3d at 415–16)).

Plaintiff has not identified any data that the Court overlooked in the March 2021 Decision and instead seeks reconsideration on the grounds that *Weiss* is more instructive than *Whelan*, the case on which the Court relied with respect to the pleading requirements for FCRA claims pursuant to section 1681e(b).  (Pl.'s Mem. 5–7.)  In *Weiss*, the court determined that because "[m]aintaining reasonable procedures is an affirmative defense under the FCRA . . . [the] plaintiff was not required to anticipate and negate this defense in his pleadings."  2020 WL 3840981, at *1.  Therefore, despite the fact that the plaintiff "failed to allege facts as to

defendant's procedures," the court permitted the plaintiff's section 1681e(b) claim to survive the defendant's motion to dismiss, finding that because the "complaint allege[d] that plaintiff repeatedly notified defendants that he was the victim of a hack targeting their computer systems; sent defendants reports corroborating his status as an identity theft victim; and that defendants removed perfectly accurate account information instead of the inaccurate information about which plaintiff was complaining," the burden shifted to defendants to demonstrate that the reports at issue were generated pursuant to reasonable procedures. *Id.* at *2–3. In making this finding, the court departed from the weight of persuasive authority regarding the plaintiff's pleading burden on a section 1681e(b). *See, e.g.*, *Abdool v. Cap. One Bank USA*, No. 21-CV-4072, 2021 WL 4147191, at *6 (E.D.N.Y. Sept. 13, 2021) (granting motion to dismiss where the "[p]laintiff merely recite[d] the elements of the statute, concluding that the [d]efendant failed to 'follow reasonable procedures to assure maximum possible accuracy of [the p]laintiff's credit report,'" and failed to "make any factual allegations regarding the procedures not followed by [the defendant] in response to her complaints" as the plaintiff's "threadbare recitals of the elements [did] not state a plausible claim for relief" (collecting cases)); *Johnson v. Target Corp.*, No. 17-CV-7535, 2019 WL 1227784, at *1 (E.D.N.Y. Feb. 12, 2019) (dismissing the plaintiff's section 1681e(b) claim as the complaint "states nothing at all about [the defendant's] procedures"), *report and recommendation adopted sub nom. Johnson v. Target Corps.*, 2019 WL 1253467 (E.D.N.Y. Mar. 13, 2019); *Frederick v. Cap. One Bank (USA), N.A.*, No. 14-CV-5460, 2015 WL 5521769, at *7 (S.D.N.Y. Sept. 17, 2015) (dismissing the plaintiff's claim as the complaint "merely recite[d] the elements of the statute, alleging in a conclusory fashion that the [d]efendants failed to 'follow reasonable procedures' and failed to 'adequately investigate'"), *opinion amended on reconsideration sub nom. Frederick v. Cap. One (USA) N.A.*, No. 14-CV-

5460, 2015 WL 8484560 (S.D.N.Y. Dec. 8, 2015); *Nguyen v. Ridgewood Sav. Bank*, No. 14-CV-

1058, 2015 WL 2354308, at *11 (E.D.N.Y. May 15, 2015) (finding that the plaintiffs failed to

state a claim against the defendant CRAs for providing reports containing "fraudulent, inaccurate

or 'deceptive' information" in violation of section 1681e(b) as the plaintiffs "fail[ed] to make

any allegations regarding either the procedures followed or investigations by [the defendant

CRAs] in response to [the plaintiffs'] complaints" (citing *Selvam v. Experian Info. Sols., Inc.*,

No. 13-CV-6078, 2015 WL 1034891, at *3–4 (E.D.N.Y. Mar. 10, 2015))); *Selvam*, 2015 WL

1034891, at *3 (granting the defendant's motion to dismiss the plaintiff's section 1681e(b) claim

where the plaintiff did "not assert any facts showing how [d]efendants acted willfully or

negligently," but merely asserted in conclusory fashion that defendants "willfully failed to

comply" and "negligently failed to comply" with the FCRA); *Gaft*, 2009 WL 3148764, at *9

(dismissing the plaintiff's section 1681e(b) claim because the plaintiff's amended complaint was

"devoid of any allegations concerning the reasonableness of the procedures used by the

defendant consumer reporting agencies").

 While Plaintiff may disagree with the Court's analysis, "[a] mere disagreement with the

[c]ourt's legal determination is not a valid basis for reconsideration." *E.E.O.C. v. Bloomberg

L.P.*, 751 F. Supp. 2d 628, 651 (S.D.N.Y. 2010); *see also Lolonga-Gedeon v. Child & Family

Servs.*, 144 F. Supp. 3d 438, 441 ("Defendant's disagreement with the [c]ourt's reading [of a

case] is not a basis for reconsideration."); *R.F.M.A.S., Inc. v. Mimi So,* 640 F. Supp. 2d 506, 512–

13 (S.D.N.Y. 2009) ("A party's fundamental disagreement with a court's legal analysis and

conclusions as to a matter fully considered does not serve as sufficient ground to warrant

reconsideration of the court's decision." (citing *Dungan v. Acad. At Ivy Ridge*, No. 06-CV-0908,

2008 WL 2827713, at *1 (N.D.N.Y. July 21, 2008))); *Mikol v. Barnhart*, 554 F. Supp. 2d 498,

502 (S.D.N.Y. 2008) ("Plaintiff's 'disagreement' with our prior determination is not an appropriate ground for reconsideration." (citation omitted)); *Alzamora v. Village of Chester*, 534 F. Supp. 2d 436, 439 (S.D.N.Y. 2008) ("The movant's disagreement with the court's interpretation of precedent is not a proper ground for reconsideration.").

### c.   Alleged deceptive acts and practices in violation of the GBL

Plaintiff argues that New York Court of Appeals' decision in *Plavin v. Grp. Health Inc.*, 35 N.Y.3d 1, 13 (2020), "affirms the broad consumer protection offered by [GBL § 349]" and that Defendants engaged in "consumer-oriented" conduct under the meaning of the statute by "compil[ing] consumer information and sell[ing] that information in the form of standardized reports to financial services compan[ies] for use in their consumer account operations, including in the opening and maintenance of consumer accounts."[3]  (Pl.'s Mem. 13–15.)

LexisNexis argues that Plaintiff improperly relies on a "New York Court of Appeals decision that was issued before his opposition brief was due," and that *Plavin* "presents no new

---

[3]  Plaintiff also alleges in his motion for reconsideration that LexisNexis' misleading conduct is ongoing and recurring, as the Consumer Financial Protection Bureau "has received 3,527 complaints against [LexisNexis] regarding '[c]redit reporting, credit repair services, or other personal consumer reports[,]' and complaints from 221 New York consumers."  (Pl.'s Mem. 16.)  The Court declines to consider this argument raised for the first time in Plaintiff's motion for reconsideration as arguments "raised for the first time in [a] motion for reconsideration" are "not properly presented to the district court" and, absent a reason to excuse the untimeliness, are waived by the party.  *Phillips v. City of New York*, 775 F.3d 538, 544 (2d Cir. 2015), *cert. denied sub nom.*, *Phillips v. City of New York, N.Y.*, 577 U.S. 822 (2015) (finding that a party had waived arguments based on documents obtained in discovery and asserted for the first time in a motion for reconsideration); *see also Harris v. Millington*, 613 F. App'x 56, 57 (2d Cir. 2015) ("We do not generally consider claims that were raised for the first time in a motion for reconsideration." (citing *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 159 (2d Cir. 2003))); *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 188 (2d Cir. 2014) (declining to consider arguments raised without excuse for the first time on a motion to reconsider); *Goldberg v. UBS AG*, 690 F. Supp. 2d 92, 98 (E.D.N.Y. 2010) ("[B]y failing to timely raise such an argument during the briefing of its motion to dismiss, defendant waived its right to seek reconsideration of this point.").

legal basis warranting reconsideration."  (LexisNexis Opp'n 7–8.)  In support, LexisNexis argues that "*Plavin* encompasses a legal principle and argument that Plaintiff already presented to this Court, as Plaintiff argued that [GBL § 349] does not require the pleading of recurring conduct towards the public," but the Court determined that Plaintiff "failed to demonstrate how his alleged experiences with [LexisNexis] had any broader impact on consumers at large."  (*Id.* at 8.)  In addition, Chex argues that *Plavin* "is readily distinguishable" as "the claims were not asserted against a CRA, like Chex, but instead against an insurance company," and the "§ 349 claim involved allegedly misleading representations about insurance plans, which, unlike consumer reports, fall within the ambit of 'consumer goods,' as they are consumer-oriented and can be purchased by consumers."[4]  (Chex Opp'n 5.)

GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 349(a).  "To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result.  *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 258 (2d Cir. 2021) (quoting *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009)); *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020).

---

[4]  In *Plavin*, the court found that the defendant's conduct was consumer-oriented because "although there was an underlying insurance contract negotiated by sophisticated entities," the defendant's subsequent marketing and dissemination of information to "hundreds of thousands of City employees in order to solicit their selection of its plan 'is precisely the sort of consumer-oriented conduct that is targeted by General Business Law §§ 349 and 350.'"  35 N.Y. 3d at 6–7.  In contrast, Plaintiff does not allege Defendants similarly marketed its reports to individual consumers but that "Defendants compile consumer information and disseminate standardized consumer reports for use by financial institutions in their consumer credit and consumer banking operations, including the opening and maintenance of consumer accounts."  (Pl.'s Mem. 17.)

As to the first element, "an act or practice is consumer-oriented when it has 'a broader impact on consumers at large.'" *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 37 N.Y.3d 169, 177 (2021) (first quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995); and then citing *N.Y. Univ. v Cont'l Ins. Co.*, 87 N.Y.2d 308, 320 (1995)), *reh'g denied*, 37 N.Y.3d 1020 (2021); *see also Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (same). "The 'consumer-oriented' requirement may be satisfied by showing that the conduct at issue 'potentially affect[s] similarly situated consumers.'" *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (alteration in original) (quoting *Oswego*, 85 N.Y.2d at 25); *Koch v. Greenberg*, 626 F. App'x 335, 340 (2d Cir. 2015) (same). However, "[p]rivate contract disputes, unique to the parties, for example, would not fall within the ambit of the statute." *Crawford*, 758 F.3d at 490 (quoting *Oswego*, 85 N.Y.2d at 25); *Himmelstein*, 37 N.Y.3d at 177 (same). "[W]hen a plaintiff 'makes only conclusory allegations of impact on consumers at large, a GBL § 349 claim must be dismissed.'" *Green v. Cap. One, N.A.*, No. 20-CV-4655, 2021 WL 3810750, at *9 (S.D.N.Y. Aug. 26, 2021) (quoting *Miller v. HSBC Bank U.S.A., N.A.*, No. 13-CV-7500, 2015 WL 585589, at *8 (S.D.N.Y. Feb. 11, 2015)).

In seeking reconsideration, Plaintiff reiterates arguments already considered and rejected by the Court. Specifically, he argues that the Court overlooked the New York Court of Appeals' "broad construction of consumer-directed activities" in *Plavin*, which is broad enough to encompass Defendant's conduct, as it entails "compiling and selling consumer information and such information is used by the recipients in granting and denying consumer access to financial services, including consumer banking services and credit cards." (Pl.'s Mem. 15.)

18

The March 2021 Decision, however, considered Plaintiff's argument that Defendants' conduct is properly construed as consumer-oriented under the meaning of the GBL because Defendants routinely compile and disseminate information about millions of consumers to third parties.  The Court dismissed Plaintiff's claim upon finding that "this wide-spread practice has no clear relation to consumer purchases of goods or services, [and] this arrangement between [Defendants] and many major banks falls outside of the ambit of consumer-oriented practices governed by § 349."  (Mar. 2021 Decision 21.)  The Court did not overlook any facts or controlling law.  To the contrary, courts have found that where, as here, the conduct at issue is directed to businesses, as opposed to individual consumers, it falls beyond the scope of GBL § 349.  *See Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 265 (S.D.N.Y. 2011) (stating that "when the activity complained of involves the sale of commodities to business entities only, such that it does not directly impact consumers, section 349 is inapplicable." (quoting *Shema Kolainu–Hear Our Voices v. Providersoft, LLC*, 832 F. Supp. 2d 194, 204 (E.D.N.Y. May 21, 2010))); *see also Bitsight Techs., Inc. v SecurityScorecard, Inc.*, 40 N.Y.S.3d 375, 378 (App. Div. 2016) (dismissing the plaintiff's claim pursuant to the GBL where the plaintiff failed to allege defendants engaged in consumer-oriented conduct as "[a]ll the parties provide services to businesses, not individuals," and "[i]n New York law, the term 'consumer' is consistently associated with an individual or natural person who purchases goods, services or property primarily for personal, family or household purposes" (quoting *Cruz v. NYNEX Info. Resources*, 703 N.Y.S.2d 103, 106 (App. Div. 2000))).

Because Plaintiff has failed to show that the Court overlooked controlling law or data, and is instead attempting to relitigate the same issues raised in the Amended Complaint, the Court denies his motion for reconsideration.  *See, e.g., Boyd v. J.E. Robert Co.*, No. 05-CV-2455,

2013 WL 5436969, at *2 (E.D.N.Y. Sept. 27, 2013) (denying reconsideration where "[p]laintiffs'
motion . . . merely attempts to relitigate and rehash arguments already considered and rejected
by the court"), *aff'd*, 765 F.3d 123 (2d Cir. 2014); *PAB Aviation, Inc. v. United States*, No. 98-
CV-5952, 2000 WL 1240196, at *1 (E.D.N.Y. Aug. 24, 2000) ("Because [the plaintiff's] motion
involves only reformulations of arguments already considered and rejected, reconsideration is
not warranted."), *aff'd*, 169 F. App'x 61 (2d Cir. 2006). The fact that Plaintiff disagrees with the
Court's outcome and is attempting to "relitigat[e] old issues," is not a basis for reconsideration.
*See Analytical Survs., Inc.*, 684 F.3d at 52. Because Plaintiff fails to identify controlling law or
allegations that the Court overlooked, the Court declines to reconsider its dismissal of Plaintiff's
claims that Defendants: (1) failed to follow reasonable procedures to assure maximum possible
accuracy in violation of section 1681e(b) of the FCRA and section 380-j of the GBL; and (2)
engaged in deceptive acts and practices in the conduct of their business, in violation of section
349 of the GBL.

### III.  Leave to amend

Plaintiff seeks leave to file a second amended complaint to include allegations regarding
additional harms suffered after the Amended Complaint was filed, including "from Capital One
(Walmart credit card closed in February 2020), Bethpage Federal Credit Union (consumer bank
accounts closed in February 2020), T.D. Bank (Nordstrom credit card closed in January 2020)
and Citibank, N.A. (two personal consumer accounts closed in June 2019)."  (Pl.'s Mem. 18.)  In
addition, Plaintiff's proposed amendment provides additional account closures and credit denials
attributable to consumer reports issued by LexisNexis, including "a Chase consumer account
closed in December 2018 and two TD Bank consumer accounts closed in February 2019."  (*Id.*)
Plaintiff seeks to allege that LexisNexis "supplied consumer reports containing the erroneous

data to Chex, which data were then incorporated into consumer reports disseminated by Chex to third parties" and that "[t]his was the source of the account denials and closures at Bethpage Federal Credit Union, Transportation Federal Credit Union, and Justice Federal Credit Union." (*Id.* at 19.)

Defendants argue that the Court should deny the request as the additional allegations would not cure the pleading deficiencies.  (LexisNexis Opp'n 12; Chex Opp'n 6–7.)

The Court finds that leave to amend would be futile because the problems with the Amended Complaint cannot be cured by the proposed amendment, which provides additional evidence of account closures within the statutory period but fails to (1) sufficiently allege that the procedures relied upon by Defendants to generate the reports at issue were unreasonable; or (2) demonstrate that Defendants engaged in consumer-oriented conduct.  *See Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) ("Leave to amend may properly be denied if the amendment would be 'futil[e].'" (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962))); *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25 (2d Cir. 2017) ("Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." (quoting *Panther Partners Inc. v. Ikanos Commc'ns, In*c., 681 F.3d 114, 119 (2d Cir. 2012))).

**IV.  Conclusion**

For the reasons stated above, the Court denies Plaintiff's motion for reconsideration.

Dated:  December 30, 2021
        Brooklyn, New York

                             SO ORDERED:


                              s/ MKB_____
                             MARGO K. BRODIE
                             United States District Judge